**THIOKOL CHEMICAL CORPORATION, Plaintiff,**

**v.**

**BURLINGTON INDUSTRIES, INC., and Avisun Corporation, Defendants.**

**Civ. A. No. 3906.**

United States District Court, D. Delaware.

Nov. 16, 1970.

Francis J. Trzuskowski, of Connolly, Bove & Lodge, Wilmington, Del., William C. Conner and Gordon K. Lister, of Curtis, Morris & Safford, New York City, for plaintiff.

Edward B. Maxwell, II, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., Wallace D. Newcomb and Stuart S. Bowie, of Paul & Paul, Philadelphia, Pa., and Hyde W. Ballard, Norristown, Pa., for defendant Burlington Industries, Inc.

Aubrey B. Lank, of Theisen, Lank & Kelleher, Wilmington, Del., C. Frederick Leydig, William B. Ross and William T. McClain, of Wolfe, Hubbard, Leydig, Voit & Osann, Chicago, Ill., for defendant Avisun Corporation.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202. It was filed shortly after this Court's decision in an earlier declaratory action involving the same parties and the same controversy in which defendants' motion to dismiss for lack of jurisdiction was granted.[1]

Defendants have moved to dismiss this new complaint on the grounds that it fails to state a claim upon which relief can be granted and that the Court lacks jurisdiction over the subject matter. Fed.R.Civ.P. 12(b) (6) and 12(b) (1). Defendants assert that the complaint fails to allege an "actual controversy" between the parties over which the Court has jurisdiction to grant declaratory relief and that the Court's previous decision is *res judicata* as to this action.

Plaintiff filed its first action against the defendants Burlington and Avisun on September 19, 1969, seeking a judgment declaring that two of its products are not covered by patents under which it was then licensed by defendant

---

1. Thiokol Chemical Corp. v. Burlington Industries, Inc., 313 F.Supp. 253 (D.Del. 1970). Since the previous action is identical to the instant case with the exception of one particular—the termination of the licensing agreement—the Court will not reiterate in this opinion much of the law and fact discussed in the previous opinion.

   The previous opinion will be cited only by page number.

Burlington,[2] that the licensed patents are invalid, that the licensed patents have been misused, and that no royalties are payable under the license. Prior to this plaintiff informed defendant Burlington that it would no longer pay royalties, and shortly thereafter it gave the 90-day notice required to terminate the license agreement. In accordance with the termination provision the licensing agreement terminated March 31, 1970. The Court's earlier decision was based on the state of facts as they existed while the licensing agreement was still in effect.[3]

It is apparent that the sole factual difference between this action and the previous one in which the Court found it had no jurisdiction is the termination of the licensing agreement. Therefore, the various arguments by the parties reduce themselves to one dispute: whether or not the termination of the licensing agreement, given the other circumstances identical to both actions, is a determinative jurisdictional factor. If it is not a determinative factor, the logic of the Court's earlier opinion would naturally apply to this action. Similarly, if the termination of the licensing agreement is not significant, the doctrine of *res judicata* would apply since the earlier action would involve the same parties, the same controversy, the same legal issues and the same material facts. Because the Court here decides that the termination of the licensing agreement is a determinative jurisdictional factor, a complicated discussion of the application of *res judicata* to jurisdictional matters is unnecessary.[4]

It should be clear from the Court's opinion in the first case that the deci-sion was premised on the fact that since the licensing agreement between the plaintiff and defendant Burlington was still in effect at the time the suit was filed it was theoretically and practically impossible for the defendant to have "charged" the plaintiff with infringement. The Court stated at 313 F.Supp. 255:

> The charge of infringement creates a justiciable controversy between the parties and the declaratory remedy permits a plaintiff to have an adjudication of the patent's validity and scope without waiting for suit by the patentee.
>
> Defendants state that they have made no charge of infringement of the licensed patents; indeed, they could not. * * * The purpose of a license agreement is to insulate those who pay for the use of patented processes or products from infringement charges and the burden of litigation. There are three situations only when a licensee could be charged with infringement: (a) the allegedly infringing devices are not covered by the license; (b) the license has expired; or (c) plaintiff has repudiated the license * * *. None of those conditions is present in the instant case. The notice given in December, 1969, caused the agreement to terminate in March, 1970, but that fact cannot confer jurisdiction retroactively on this Court * * *. (citations omitted)

Since the legal barrier to a "charge of infringement" is eliminated in this action, the question becomes whether the statements and activities of the defendants amount to a charge of infringement

2. Defendant Avisun was joined in both actions because it is alleged to own one of the patents in question. 313 F.Supp. at 254.

3. *Id.* at 256.

4. It is well established that the principles of *res judicata* apply to decisions on jurisdiction. See, e. g., American Surety Co. v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932); 1B Moore, Federal Practice ¶ 0.405 [5]. By the same token, a dismissal for lack of jurisdiction does not preclude a later action if in the interim the requisite jurisdictional events have occurred. See, e. g., United States v. Costello, 171 F.Supp. 10, 21–22 (S.D.N.Y.1959), aff'd 275 F.2d 355 (2d Cir. 1960), aff'd 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); 1B Moore, Federal Practice ¶ 0.405 [5] at p. 661.

within the meaning of the relevant case law.

Plaintiff contends that it has been charged with infringement by reason of the construction logically created by: (1) the statement in the licensing agreement that plaintiff's products " * * * but for this license, would infringe any of the claims of said patent"; (2) the defendant Burlington's consistent and repeated demands for payment of royalties under the licensing agreement; (3) the unchallenged fact that plaintiff is manufacturing and during all relevant times has manufactured the same products that the defendants say the license covers; (4) the fact that the license has been terminated; and (5) the defendants' presently pending suit in Pennsylvania state court against plaintiff for royalties under the license.

■ Defendants contend that the complaint is fatally defective because it fails to specifically allege in terms that defendant charged plaintiff with infringement and that the facts pleaded do not amount to a charge of infringement. The first contention is, of course, unmeritorious: a complaint need state the facts from which the claim arises, not legal conclusions about the alleged facts. Fed.R.Civ.P. 8. The second contention must be evaluated in light of a number of earlier cases in this area.

The jurisdictionally required "actual controversy" does not exist in a declaratory action until the patentee "makes some claim that his patent is being infringed." Treemond Co. v. Schering Corp., 122 F.2d 702, 705 (3rd Cir. 1941). It is, however, quite clear that this claim or "charge" need not be made in any particular legal jargon or ceremony; any set of words or acts will do if it "clearly manifests defendant's intent to assert his patent rights as covering plaintiff's product." Smith-Corona Marchant, Inc. v. American Photocopy Equipment Co., 214 F.Supp. 348, 350 (S.D.N.Y.1962). Analysis of the cases in this field indicates that Professor Moore's view that the "charge of infringement" requirement has been given

a "very liberal interpretation" is well substantiated by the case law. See, e. g., Muller v. Olin Mathieson Chemical Corp., 404 F.2d 501, 504 (2nd Cir. 1968).

Two cases decided by the Third Circuit adequately point up the liberal interpretation of the requisite threat necessary to ground a declaratory judgment action. In Dewey & Almy Chemical Co. v. American Anode, Inc., 137 F.2d 68 (3rd Cir. 1943), the Court held that an actual controversy was presented where the patentee had sued other manufacturers for infringement and made claims in those suits concerning the scope of its patent sufficiently broad to cover the plaintiff's process even though the patentee had not approached the plaintiff and, indeed, alleged that it did not even know that plaintiff used such a process. Similarly, and perhaps more broadly, the Third Circuit found an actual controversy in Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp., 257 F.2d 485 (3rd Cir. 1958) (trade mark case) even though there was absolutely no threat of litigation because the defendant had prevented plaintiff's competition by other means. The Court concluded that "since the plaintiff had notice of the defendant's adverse position, it was not necessary that an actual threat of infringement and litigation be shown." Id. at 490.

■ In this case there is much more. The defendants' suit in state court and, indeed, the allegations concerning the entire history of the licensing agreement demonstrate that defendants forcefully take and have always taken the position that the patents are valid and that plaintiff's products infringe on those patents. Now that the licensing agreement is terminated, the plaintiff is quite right in believing that the defendants will one day (perhaps quite soon) accuse the plaintiff of infringing their patents by reason of its current operations. The purpose of the Declaratory Judgment Act in the patent area is to prevent a patentee from suing at his leisure if

lengthy delay adversely affects potential or actual manufacturers.

There can be no doubt that the parties are engaged in a controversy[5] and that the main, if not exclusive, bone of contention is the validity of the defendants' patents, a matter normally subject to the exclusive jurisdiction of the federal courts. Plaintiff continues to make the products that defendants have contended are covered by the patents; it continues to refuse to pay royalties. Defendants' suit to recover those royalties, when taken together with all of the other factors involved in this case "clearly manifests defendant's intent to assert his patent rights as covering plaintiff's product." Smith-Corona Marchant Inc. v. American Photocopy Equipment Co., supra.

Defendants took the position at oral argument that a holding by the Court that the defendants' state court suit for royalties under the licensing agreement amounted to a charge of infringement sufficient to create an "actual controversy" and ground a federal declaratory judgment action by the licensee would have the untoward result of systematically ousting state courts of jurisdiction of contract claims in any situation where a licensor goes into state court to recover on his contract for royalties. The short answer to this contention is that it may well be true, although the Court only decides in this case that the circumstances before it in this dispute warrant a finding that there exists an actual federal controversy *arising under the patent laws.*

■ On the more basic issue of the division of jurisdiction between state and federal courts, it would seem that where, as here, the main dispute between a licensor and licensee is the validity and scope of federal patents, a limited monopoly granted by sole virtue of federal law, the federal forum is the better forum for the resolution of all the issues between the parties. Federal courts have exclusive jurisdiction over patent cases. 28 U.S.C. § 1338(a). This exclusive jurisdiction rests on the presumption that federal courts will promote the "strong federal policy favoring free competition in ideas which do not merit patent protection." Lear, Inc. v. Adkins, 395 U.S. 653, 656, 89 S.Ct. 1902, 1904, 23 L.Ed.2d 610 (1969). See also: Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). Of course, *Lear* did not expand the jurisdiction of the federal courts in patent cases;[6] but *Lear, Sears, Roebuck* and *Compco* all demonstrate conclusively that where state law—statutory or judicial—inhibits either directly or indirectly the policies underlying the federal patent laws the federal patent law policies must override state law.

No conflict between state law and federal patent law has been presented on this motion. But the Court is of the view that in this matter of jurisdiction, if there is a choice between federal and state jurisdiction, the choice must lie with the federal courts. If the state court action proceeds, Thiokol will undoubtedly assert the invalidity of the federal patents as a defense, and plaintiff intimates that defendants' real purpose in deferring from an infringement action and merely suing in state court for royalties is to attempt to obtain a ruling that the patent is valid from a state court inexperienced in federal patent law and awed by the Patent Office's grant of the patent in suit.[7] This Court refuses to adhere to any such uncomplimentary view of the capability of the

---

5. "There is no question that plaintiff and defendant are embroiled in a dispute about the license agreement and the underlying patents." 313 F.Supp. at 255.

6. 313 F.Supp. at 255.

7. Plaintiff asserted at oral argument that, after *Lear*, a state court decision upholding defendants' right to receive royalties would be *res judicata* on the federal questions of the validity and scope of the patents. Needless to say, the Court does not consider these questions.

Pennsylvania state courts and intimates no view as to why the defendants wish to avoid for the present a federal court suit on the validity and scope of their patents. But the complaint in this action alleges that the patents are invalid, do not cover plaintiff's products and are misused by the defendants. These allegations must be accepted as true for purposes of this motion to dismiss. And, if these allegations are true, the defendants' posture in the state court action represents the type of overrreaching by patentees that the Supreme Court's decisions in *Lear, Sears, Roebuck* and *Compco* were intended to curtail.

While defendants delay the commencement of an infringement suit against plaintiff, plaintiff's damages continue to mount if his products actually infringe defendants' patents. His business may be harmed. Their state court suit involving only one year of the many past and future years of dispute between these parties cannot possibly resolve all the differences between them. Now that the licensing agreement is terminated, this Court would have to close its eyes to reality to ignore the continuing threat of an infringement suit against the plaintiff and deny, on that basis, that there is an "actual controversy" between them arising under the patent law.

The motion to dismiss is denied. Submit order in accordance herewith.