**MEDTRONIC, INC., Plaintiff,**

v.

**AMERICAN OPTICAL CORPORATION, Defendant.**

**No. 4–70–Civ. 472.**

United States District Court,
D. Minnesota,
Fourth Division.

April 23, 1971.

Tom Arnold, Arnold, White & Durkee, Houston, Tex., Lawrence Perlman, Fredrikson, Byron & Colborn, Minneapolis, Minn., for plaintiff.

Benno F. Wolff, Oppenheimer, Brown, Wolff, Leach & Foster, St. Paul, Minn., Stanton T. Lawrence, Jr., Pennie, Edmonds, Morton, Taylor & Adams, New York City, for defendant.

## MEMORANDUM DECISION

LARSON, District Judge.

This is an action for declaratory relief under 28 U.S.C. §§ 2201 and 2202. Plaintiff Medtronic, Inc. seeks a declaratory judgment that two patents of defendant American Optical Corporation are invalid and that no heart pacemaker of plaintiff has infringed either patent. In addition, plaintiff seeks to enjoin defendant from both collecting royalties from plaintiff in consideration for a license under the patents, and from threatening suit against plaintiff or its customers for alleged infringement of the patents. Finally, plaintiff seeks a temporary decree authorizing it to pay royalties which are accruing under a license agreement with defendant to an escrow agent during the pendency of this litigation.

Defendant has moved to dismiss the complaint on the ground that this Court lacks jurisdiction over the subject matter. Fed.R.Civ.P. 12(b) (6). It asserts that the complaint fails to set forth the existence of an actual controversy between the parties as required for a declaratory judgment under 28 U.S.C. § 2201.

By stipulation of the parties, the plaintiff's motion for a temporary de-

cree authorizing it to escrow royalty payments was postponed until the jurisdictional question was decided. The parties submitted lengthy memoranda on the merits of defendant's motion to dismiss for lack of jurisdiction. It was also the subject of a hearing on March 27, 1971.

Plaintiff is a Minnesota corporation and the leading manufacturer of cardiac pacemakers. Defendant is a Delaware corporation with principal offices in Massachusetts. The defendant owns the two patents involved in this controversy: (a) Patent 3,345,990 ("the '990 patent"), issued on October 10, 1967, relates to a "demand" cardiac pacemaker which stimulates the heart only in the absence of a natural beat; and (b) Patent 3,528,428 ("the '428 patent"), issued on September 15, 1970, relates to a pacemaker which is protected from malfunctioning due to stray electrical interference.

After the issuance of the '990 patent, the defendant charged plaintiff with infringement. While the charge was denied, it triggered negotiations which resulted in a non-exclusive License Agreement on November 23, 1968. This Agreement called for the plaintiff to make royalty payments on devices covered by "valid" claims of patent '990 within thirty days after the last day of each January, April, July and October. The Agreement provided that the plaintiff's royalty obligations would be unaffected by any court decision regarding the validity of the patent until that decision became final and unappealable. The plaintiff paid over $750,000 in royalties before filing this suit on October 30, 1970. On that date $78,000 in royalties had accrued but was not yet due.

After the License was signed the plaintiff developed a demand pacemaker —Model 5843—which operates on a "rate hysteresis" principle and contains an interference-avoidance circuit. Model 5843 was produced and sold by the plaintiff prior to the filing of the suit.

About $1,000 in royalties had accrued on these sales as of that date.

The Agreement granted the plaintiff the right to notify the defendant of any substantial infringement of patent '990. After being informed that Viatron Medical, Inc., was infringing its patent, the defendant filed suit against that company in the District Court in Massachusetts. That suit is now pending trial. The plaintiff also informed the defendant that the General Electric Company was manufacturing an implantable pacemaker which operated on a rate hysteresis principle; but it contended that this device did not infringe the '990 patent. The defendant, however, took the position that a rate hysteresis pacemaker was covered by the '990 patent and it informed the plaintiff that it would bring suit against General Electric if it did not take a license on its implantable pacemaker. General Electric, according to the defendant, orally admitted infringement by its external pacemaker but denied infringement by its implantable device.

In March 1970 the plaintiff informed defendant that it was about to manufacture and market its own rate hysteresis device in Europe. On October 6, 1970, plaintiff's patent counsel, Donald R. Stone, informed defendant's chief patent counsel, William C. Nealon, that a "significant number" had been sold to plaintiff's Dutch subsidiary for resale in Europe. Stone continued, "We believe that the manufacture and sale of these devices by Medtronic, Inc., incurs no obligation to pay royalties under our license agreement of November 23, 1968, because we believe that such activity does not infringe any valid claim of the Berkovits 3,345,990 patent. We will appreciate your prompt concurrence with our opinion in this matter because we are not accruing royalties on these devices."

Nealon replied promptly but did not concur. In a letter dated October 14, 1970, he stated in part:

"We have now *completed a study* of your October 6th letter and attached

circuitry relative to the Medtronic Model #5843 pacemaker. We believe *this pacemaker is covered by the Berkovits patent No. 3,345,990.* We also believe *it conflicts with our recently-issued patent No. 3,528,428* (copy attached).

"Since we have been very open with each other to date, I am attaching a copy of the memorandum prepared by our electronics expert applying claim 3 of Berkovits No. 3,345,990 and claim 40 of No. 3,528,428. If you disagree with our reasoning, may we suggest a meeting to discuss the matter in detail." (Emphasis added.)

The attached memorandum was titled, "Medtronic Model 5843 Infringement Study." It posed the following question: "Is the subject demand pulse generator (pacemaker) read on by the claims of Patent No. 3,345,990 and Patent No. 3,528,428?" It concluded: "The subject pacemaker is read on by the claims of both patents."

■ ■ The fundamental question in this case, as in every declaratory judgment action, is whether a justiciable controversy exists—that is, whether the facts reveal the existence of an actual controversy between parties having opposing legal interests of such immediacy that a declaration of rights is warranted. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 85 L.Ed. 826 (1941). Hypothetical or abstract questions are thus not suitable for this type of judicial determination. Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1936). The Declaratory Judgment Act is procedural and does not grant jurisdiction to Federal courts; it simply allows adjudication of select cases where courts already have jurisdiction. In the present case, plaintiff predicates subject matter jurisdiction with respect to the '990 patent on two separate grounds: (a) the action arises under the patent laws of the United States, 28 U.S.C. § 1338; and (b) the matter in controversy exceeds $10,000 and arises between parties which are citizens of different States, 28 U.S.C. § 1332. With respect to the '428 patent, jurisdiction is predicated only of 28 U.S.C. § 1338.

## PATENT LAW JURISDICTION: THE '990 PATENT

There was a good bit of fencing in the parties' briefs over the issue of whether a formal charge of infringement or explicit threat of suit is a prerequisite to the maintenance of an action for declaration of non-infringement or invalidity. A charge of infringement is a court's greatest assurance that it is not being asked to decide an abstract question. This is the policy consideration underlying the requirement. The charge creates an actual case or controversy fit for judicial determination.

While conceding that many courts have found this requirement lacking in cases between parties to a license agreement, plaintiff nevertheless argues that a justiciable controversy exists over the scope and validity of patent '990. Plaintiff contends that courts in these cases have concentrated to such a degree on the charge of infringement requirement that they have lost sight of the more fundamental question—namely, whether there is an actual controversy between the parties.

Defendant, on the other hand, submits that a "charge of infringement or conduct tantamount thereto, which creates a reasonable apprehension of liability on the part of a declaratory judgment plaintiff, is the minimum requirement for an actual controversy arising under the patent laws." This broad interpretation, focusing as much on the plaintiff's state of mind as on the defendant's conduct, is by far the majority rule. Owatonna Manufacturing Company v. Melroe Company, 301 F.Supp. 1296, 1299 (D.Minn.1969); and cases collected in 6A Moore's Federal Practice 3118–3121.

Defendant contends that because the license was in full force it could not pos-

sibly charge plaintiff with infringement of the '990 patent. In essence it reasons as follows: because there is a license, there can be no charge; because there is no charge, there can be no controversy; because there is no controversy, this Court lacks jurisdiction.

The defendant's letter of October 14, 1970, and the accompanying "Infringement Study" unequivocally maintain that Model 5843 is covered by the '990 patent. Earlier it threatened suit against General Electric for manufacture of devices that operated on the same principle. There can be no question that, absent the license, these statements and actions would be enough to constitute the "actual controversy" that is the necessary basis for a declaratory judgment action. In arguing that the license prevented it from threatening the plaintiff, the defendant is asking this Court to disregard what it actually said and did. From the opposite point of view, can it be reasonably contended that the plaintiff was less apprehensive of a suit because of the License Agreement? The plaintiff was aware that the defendant could terminate the license and sue for infringement of the '990 patent at any time. In the present case there is no need to await termination by one of the parties: the plaintiff has reasonable apprehension of liability for manufacturing and selling the newly developed Model 5843. This Court needs no further assurances that a real controversy exists between the parties.

■ This Court finds authority for holding that the mere existence of a license agreement does not prevent the creation of a justiciable controversy between licensee and licensor in Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), and Beckman Instruments, Inc. v. Technical Development Corp., 433 F.2d 55 (7 Cir. 1970). In *Lear* the Supreme Court abolished the doctrine of licensee estoppel and enunciated the strong public policy that patent validity should be open to challenge by licensees. In *Beckman* a sub-licensee brought a declaratory judgment action

challenging the validity of the patent while the license agreement was in effect, and also alleging the illegality of that agreement. The Seventh Circuit reversed the district court's summary judgment for defendant on the authority of *Lear*:

> "The district court, relying on the licensee estoppel doctrine, granted defendants' motion for summary judgment. Two months later the Supreme Court overruled this doctrine in Lear, Inc. v. Adkins, * * *. Relying on the supremacy of federal patent policy over state contract law, the Court held that the public interest in encouraging challenges to invalid patents requires that licensees be allowed to challenge patent validity and escape payment of royalties. The link between the need for challenge and the remedy of abolishing licensee estoppel was provided by the Court's holding that: 'Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification.' " 433 F.2d 55, at 58 (citations omitted).

Two points are noteworthy about the Seventh Circuit's ruling; it did not require Beckman to terminate the license before bringing its action and it interpreted *Lear* as enunciating a policy of removing legal and economic barriers to patent challenges by licensees. This Court accepts the Seventh Circuit's interpretation of *Lear* in toto.

A different interpretation of the Supreme Court's holding was taken in Thiokol Chemical Corp. v. Burlington Industries, Inc., 313 F.Supp. 253 (D. Del.1970), which the defendant claims is a replica of the present case. There a declaratory judgment action was dismissed on the ground that a justiciable controversy did not exist between plaintiff-licensee and defendant-licensor. The district court found that the defendant could not charge infringement of the

licensed patents while the license was in effect. It ruled that *Lear* had no relevance to the jurisdictional issues in the case. Several months later, after terminating the agreement, the plaintiff brought a second declaratory judgment action. This time the court found it had jurisdiction. Thiokol Chemical Corp. v. Burlington Industries, Inc., 319 F.Supp. 218 (D.Del.1970). In the interval the defendant did not charge infringement; but the court found that the plaintiff was correct in believing that "one day" the defendant would accuse it of infringement. The license termination was the sole factual difference between the first action and the second.

There is one important factual distinction between the circumstances in *Thiokol* and the present case. In *Thiokol* it was an "unchallenged fact that plaintiff is manufacturing and during all relevant times has manufactured the same products that the defendants say the license covers." 319 F.Supp. 218, at 221. While the facts are sketchy, it appears that the plaintiff's product line was in existence at the time of the formation of the license agreement. By contrast, in the present case it is an unchallenged fact that the plaintiff was not manufacturing rate hysteresis devices in 1968 when the License Agreement was signed. It began production in quantity in 1970, shortly before this action was filed. This Court is not expressing any opinion on the validity of the patent when it notes that plaintiff has always alleged that this is a new device outside the reach of the '990 patent. It will be recalled that the General Electric Company also took this position regarding the rate hysteresis principle.

While the *Thiokol* cases can be distinguished on their facts, it must be conceded that they give a far more restrictive reading of *Lear* than this Court does. Moreover, the cases reveal the drastic steps which a licensee must take when judicial relief under the Declaratory Judgment Act is denied at an early stage in the controversy. One purpose of this Act is to permit a potential defendant to obtain an adjudication of his rights and obligations under a contract without first breaching that contract and incurring damages which may imperil its very existence. Actual controversies can thus be settled before they result in the accrual of damages or termination of the contract.

The present action is typical of the cases that Congress intended to be settled by a declaratory judgment suit. The plaintiff prays for a declaration that patent '990 is invalid and non-infringed. It requests a temporary decree authorizing it to pay royalties allegedly due under the License Agreement to an escrow agent. Since the Agreement requires royalties on products "covered by a valid, issued, unexpired claim or claims" of this patent, the various prayers necessitate the construction of the contract and an interpretation of patent law. No useful purpose would be served by forcing the plaintiff to terminate the contract before bringing suit. It is precisely at this juncture in the controversy—just after threats have been made by the patentee and just before termination of the contract and accrual of unnecessary damages—that a declaratory judgment action is appropriate. 6A Moore's Federal Practice 3115–3116. The defendant has submitted no evidence that the contractual and patent law issues cannot be settled by a declaratory judgment by this Court.

The defendant asserted during oral argument that these issues can just as easily be litigated in the District Court in Massachusetts, where it recently filed suit against the plaintiff for unpaid royalties. That suit, however, will not settle the issue of the validity of patent '428. In view of this it would not be appropriate for this Court to transfer the case to Massachusetts.

Prior to *Lear*, as both parties acknowledge, it was widely held that an action for a declaration of the invalidity or non-infringement of an unlicensed patent was a suit under the patent laws. Today this Court holds that an action

for a similar declaration of a licensed patent is also a suit under the patent laws. Accordingly, this Court finds it has patent law jurisdiction over the controversy surrounding the '990 patent.

## PATENT LAW JURISDICTION: THE '428 PATENT

■ It is not disputed that the letter dated October 14, 1970, was plaintiff's initial notice that patent '428 had been issued to the defendant. This letter was also the last correspondence about patent '428 before the filing of the complaint in which plaintiff prayed that this patent be declared invalid and noninfringed. The defendant takes the position that a "single expression of opinion" from a man who did not "intend" to charge infringement is not enough to create a justiciable controversy over the '428 patent. There is, however, no requirement that an "actual controversy" can exist only after lengthy correspondence or a breakdown in negotiations. Nor must a declaratory judgment plaintiff prove that its adversary possessed a certain state of mind when it made accusations of infringement. All that must be shown is that the patentee either levied charges of infringement or acted in a manner which created a reasonable apprehension of liability on the part of the declaratory judgment plaintiff.

■ This Court finds that the letter dated October 14, 1970, and the attached "Infringement Study" constitute a formal charge that plaintiff's Model 5843 infringes patent '428. The letter, written by defendant's Chief Patent Counsel, states that the pacemaker "conflicts" with the patent. The Infringement Study contained a line-by-line application of the patent to the pacemaker. It concluded that the pacemaker is "read on by the claims of both patents." In view of these statements and in view of the defendant's practice of threatening suit and actually bringing suit against alleged infringers of the related '990 patent, the plaintiff could reasonably fear that the defendant would eventually

sue it for infringement of the '428 patent. Again, this is the type of controversy that Congress intended to be settled by a declaratory judgment action.

Accordingly, this Court finds that an actual controversy exists between the parties over the validity and claims of the '428 patent, that this controversy arises under the patent laws of the United States, that subject matter jurisdiction exists under 28 U.S.C. § 1338, and that this controversy can be properly settled by a declaratory judgment.

## DIVERSITY JURISDICTION: THE '990 PATENT

■ For this Court to have jurisdiction over a case between parties of diverse citizenship, the matter in controversy must exceed $10,000. 28 U.S.C. § 1332. The defendant contends that the requisite jurisdictional amount did not exist when the complaint has filed on October 30, 1970. The plaintiff, therefore, has the burden of proving its allegations about the amount in controversy by a preponderance of the evidence. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1935).

It is not contested that $78,000 in royalties had accrued on the sales of various types of pacemakers, including $1,000 on Model 5843, during the quarter ending on the last day of October 1970. Under the terms of the contract, plaintiff was obliged to pay these royalties during the thirty day period following the end of this fiscal quarter. Thus, when it filed suit plaintiff was not in default and the royalty payments were not yet due.

A somewhat comparable situation existed in Davis v. American Foundry Equipment Co., 94 F.2d 441 (7 Cir. 1938), which is discussed at length in the parties' memoranda. This case involved a patent license which called for royalty payments of $500 a year or a total of $9,500 over the life of the contract. The defendant-licensee refused to pay on the ground that the license agreement was void under State law.

After four years, when only $2,000 had become due, the plaintiff brought suit for a declaratory judgment that the contract was valid. Jurisdiction was invoked on the ground of diversity of citizenship. The Seventh Circuit held that the then $3,000 jurisdictional amount was satisfied because in a declaratory judgment action to determine the validity of a contract, the value of the contract determines the jurisdictional amount. In a frequently cited passage, the Circuit Court said:

> "But it is to be observed that the question in controversy is the validity of a contract which has an admitted value of at least $9,500. Plaintiff sought the aid of the court in the form of a decree declaring the contract valid. This is a suit not for coercive relief for the damages thus far accrued, but rather for declaratory relief. * * * In such a situation to exercise jurisdiction under the Declaratory Act is not to extend the jurisdiction of the court but merely to hasten the day when that jurisdiction may be invoked, and as in suits quieting titles, the amount in controversy is the value of the thing which is said is incumbered with a voidable cloud. *The value in controversy is the value of that which it is sought to have declared free of doubt, namely, the contract for $9,500.*" 94 F.2d 441, at 443. (Emphasis added.)

The defendant argues that in contrast to *Davis*, where the Court was able to determine the precise amount in controversy from the face of the contract, it is not possible for this Court to determine from the License Agreement the amount of royalties which must be paid on future sales of Model 5843 pacemakers.

This is entirely correct, but it does not settle the issue.

The present controversy may have been precipitated by the development of Model 5843 but it did not end there. Plaintiff requests that patent '990 be declared invalid and non-infringed by "any one of the heart pacer models now being made, used or sold by plaintiff." If this prayer is granted, the plaintiff would be entirely relieved of royalty obligations under the License Agreement on the sales of its pacemakers. The value of the plaintiff's royalty obligation on the date of the filing of the complaint need not depend on indeterminable future sales; its minimum value can be calculated by the amount of royalties that had accrued on the sales of all models by that date. A total of $78,000 had accrued on that date. This was the amount in controversy.

■ The fact that royalty payments had accrued but were not yet due is not a defect in plaintiff's case. As previously noted in this opinion, the Declaratory Judgment Act was designed to permit a potential defendant to obtain a declaration of its rights and obligations under a contract without having to breach that contract and incur unnecessary damages. It was intended to provide relief before either party sought a coercive remedy. The plaintiff brought this declaratory action at a time when damages to both parties could be minimized.

This Court finds that the plaintiff has sustained its burden of proving that the amount in controversy exceeds $10,000. Accordingly, this Court has jurisdiction under 28 U.S.C. § 1332.

The motion to dismiss must therefore be denied.