**C.R. BARD, INC., Plaintiff-Appellant,**

**v.**

**Boris SCHWARTZ, Defendant-Appellee.**

**Appeal No. 83–682.**

United States Court of Appeals,
Federal Circuit.

Aug. 30, 1983.

Charles B. Smith, New York City, argued, for plaintiff-appellant. With him on brief were Fish & Neave, Frank L. Politano, Therese A. Hendricks, New York City, Dempsey, Dempsey & Sheehan, Bartholomew A. Sheehan, Jr., Summit, N.J., and Kenneth F. Coughlin, Jr., Murray Hill, N.J.

William J. Shaughnessy, Newark, N.J., argued, for defendant-appellee. With him on the brief was Salvatore T. Alfano, Garfield, N.J., of counsel.

Before FRIEDMAN, RICH, BALDWIN, KASHIWA, and BENNETT, Circuit Judges.

KASHIWA, Circuit Judge.

This case on appeal from the United States District Court for the District of New Jersey raises two important issues. First, we must decide whether we have jurisdiction under The Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 127, 96 Stat. 25, 37 (28 U.S.C. § 1295) to decide whether a federal district court has jurisdiction of a case under 28 U.S.C. § 1338(a) (1976). If we have jurisdiction, we must then decide whether a patent licensee may bring a federal declaratory judgment action to declare a patent subject to a license invalid while that license is still in effect. We hold that we have jurisdiction of this case under § 1295(a) and that a patent license need not be terminated before a patent licensee may bring a federal declaratory judgment action.

I

On August 17, 1971, Boris Schwartz, the appellee, was granted U.S. Patent No. 3,559,637 (hereinafter the Schwartz patent) for an intravenous catheter assembly. On January 3, 1972, C.R. Bard, Inc., the appellant, and appellee Schwartz entered into a license agreement. Under that agreement, appellant was granted an exclusive worldwide license by appellee to make, use, and sell the catheter assembly. Bard paid Schwartz $5,000 for the licensing agreement and agreed to make subsequent royalty payments to Schwartz. From 1972 to the present, Bard and its sublicensee, Delmed, Inc., have made and sold the catheter assembly in the United States. Bard paid Schwartz some royalties pursuant to the license agreement but ceased making these payments prior to commencement of this federal suit.

Schwartz filed an action in the Law Division of the Superior Court of the State of New Jersey, Passaic County, on January 25, 1982. The state complaint and summons were served on Bard on March 12, 1982. That complaint made five allegations:

1. Bard failed to use its best efforts as required by contract to promote and sell the catheter assembly;

2. Bard did not intend to promote the catheter assembly but intended only to limit the competition to which its own catheters would be subject and thereby acted fraudulently;

3. Bard breached its fiduciary obligation under the license by failing to promote

the catheter assembly and disclose its true marketing intentions;

4. Bard failed to report and pay all royalties due on the sales of the catheter "Advanset," which embodies Schwartz's invention;

5. Bard's purported sublicense agreement with Delmed was in actuality an assignment of Bard's rights and as a result Bard has not paid the full amount of royalties owed to Schwartz.

Schwartz requested compensatory and punitive damages, an accounting, interest, and costs. Bard maintains that it took no action with respect to the state action because it believed the Schwartz patent to be invalid and unenforceable.

On March 25, 1982, Bard filed a complaint in federal district court seeking, among other relief, a judgment declaring that defendant's patent is invalid and unenforceable, that the license agreement between the parties is void and unenforceable as against federal law and policy, and that no royalties are payable to Schwartz under the license. Bard further sought judgment against Schwartz for all royalties paid under the agreement and for its litigation costs. In addition, Bard sought to enjoin Schwartz both from asserting his patent against Bard and from proceeding with his state action against Bard. Bard alleged it was vulnerable to a federal claim of patent infringement due to Schwartz's institution of the New Jersey state action, his present ability to terminate the license agreement at any time or to assert its completed termination by its own terms, and Bard's failure to pay royalties. Bard asserted that its action for declaratory judgment raises a defense in anticipation of an impending federal action, and that federal "arising under" jurisdiction is present under 28 U.S.C. § 1338(a) (1976).[1] Since both Bard and Schwartz are residents of the same state, there is no diversity jurisdiction.

The district court held, however, that it did not have jurisdiction of the case under § 1338(a). The court first found that the license agreement had not been terminated.[2] It held next that, in the absence of diversity jurisdiction, a licensee may bring a federal declaratory judgment action to declare the patent subject to the agreement invalid only when the license agreement has been terminated. The court, relying upon the Third Circuit's decision in *Thiokol Chemical Corp. v. Burlington Industries, Inc.,* 448 F.2d 1328, 171 USPQ 193 (3d Cir. 1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972), held that a licensee does not have a reasonable apprehension of an impending infringement suit while a license agreement is in effect. The court also said "Bard has not demonstrated that there is any concrete indication that Schwartz has terminated or intends to terminate the license agreement or file an infringement action * * *." It relied upon an affidavit filed by Schwartz in conjunction with his motion to dismiss the district court action. That affidavit said:

I have and have had no intention of voluntarily terminating the License Agreement between Bard and me dated January 3, 1972, the subject of the state court action; I also state that I have and have had no intention of instituting any action against Bard for infringement of United States Patent No. 3,599,637 which was issued to me on August 17, 1971, by virtue of any product presently being sold by Bard.

---

1. 28 U.S.C. § 1338(a) (1976) provides:

 *§ 1338. Patents, plant variety protection, copyrights, trade-marks, and unfair competition*

 (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights, and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

2. The district court said:

 This court rejects plaintiff's contention that Schwartz's service of the New Jersey complaint may have served as written notice of default under the license agreement thus terminating said agreement pursuant to Paragraph 8(d) thereof.

 That issue is not raised on appeal.

Appellant is now before this court asking us not to follow the *Thiokol* line of cases. It urges us to follow the view of the Second, Ninth, and D.C. circuits, *Geni-Chlor International, Inc. v. Multisonics Development Corp.,* 580 F.2d 981, 200 USPQ 67 (9th Cir.1978); *Warner-Jenkinson Co. v. Allied Chemical Corp.,* 567 F.2d 184, 193 USPQ 753 (2d Cir.1977); *Hanes Corp. v. Millard,* 531 F.2d 585, 189 USPQ 331 (D.C.Cir.1976); and hold that the federal district court has jurisdiction of this action under § 1338(a). Appellee, on the other hand, argues that we need not decide the *Thiokol* issue because there is, in any event, no justiciable controversy here. Appellee relies upon the affidavit for this argument. He further urges that this court does not have jurisdiction to decide this case.

## II

Appellee contends that it is not within this court's jurisdiction to decide whether a federal court has jurisdiction under § 1338(a) over a controversy where a licensee alleges that the patent subject to a continuing license agreement is invalid. Appellee argues that

> [t]he issue raised by Bard goes to the fundamental power of a federal district court to act. Neither the wording of 28 U.S.C. § 1295(a), the legislative history, nor the purpose of this Court suggests that it should decide such a basic jurisdictional question.

Appellee's Brief at 11. We disagree.

■ This court has inherent jurisdiction to determine its own jurisdiction. *United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). 28 U.S.C. § 1295 governs this court's jurisdiction. It provides in pertinent part:

> *§ 1295 Jurisdiction of the United States Court of Appeals for the Federal Circuit*
>
> (a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—
>
> (1) of an appeal from a final decision of a district court of the United States, the United States District Court for the

District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title, except that a case involving a claim arising under any Act of Congress relating to copyrights or trademarks and no other claims under section 1338(a) shall be governed by sections 1291, 1292, and 1294 of this title * * *.

Under § 1295 this court is granted exclusive jurisdiction to review a district court's final decision where that court's jurisdiction was based in whole or in part on § 1338. Thus, by the very terms of the statute, in order to determine the scope of our own jurisdiction we must decide whether the jurisdiction of a district court whose decision is before us is based on § 1338. In the instant case the sole issue decided by the district court was whether it had jurisdiction under § 1338 and that is the issue raised on appeal. Therefore, in order to decide whether we have jurisdiction over the instant appeal, we must determine whether the district court had jurisdiction under § 1338, the issue on appeal.

■ Any other conclusion would cause our jurisdiction to turn on the decision reached by the lower tribunal. Under the terms of § 1295, if the district court had found its jurisdiction was based on § 1338 the appeal of that decision would come to this court. We would have exclusive jurisdiction of that appeal under § 1295. To say, however, that where a district court holds it lacks jurisdiction under § 1338(a) the appeal of that issue should go to the regional circuit court, is an absurd result. As the arbiter of our own jurisdiction, we necessarily have the power to decide the threshold question whether the district court has jurisdiction under § 1338 independent of the conclusion reached by the district court.

Furthermore, Congress intended that the "jurisdictional language [of § 1295] be construed in accordance with the objectives of

the Act * * *." S.Rep. No. 275, 97th Cong., 2d Sess. 20, *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, 30. This court was formed to provide uniformity in the patent field and to prevent forum shopping. *See* S.Rep. No. 275 at 3–6, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 13–16; H.R. Rep. No. 312, 97th Cong., 1st Sess. 20–23. The substantive issue raised by this case is whether a federal court may have jurisdiction under § 1338 where a licensee alleges that the patent subject to a continuing license agreement is invalid. This issue is vital to the practice of patent law since it governs when a licensee may litigate the validity of the licensed patent in federal court. To date the federal courts have been in conflict over this issue. *Compare Thiokol,* 448 F.2d 1328; *Milprint, Inc. v. Curwood, Inc.,* 562 F.2d 418, 196 USPQ 147 (7th Cir. 1977); *Product Engineering and Manufacturing, Inc. v. Barnes,* 424 F.2d 42, 165 USPQ 229 (10th Cir.1970) (license termination required) *with Geni-Chlor International,* 580 F.2d 981; *Warner-Jenkinson,* 567 F.2d 184; *Hanes Corp.,* 531 F.2d 585 (no license termination required). Contrary to appellee's contention, the purpose of this court can only be successfully fulfilled if we have jurisdiction to decide this issue. Nothing can be more fundamental to the patent field than the question of when patent validity may be litigated in a federal forum.

Thus, we reject appellee's contention that the appeal of jurisdictional questions under § 1338 must be heard by the regional circuit courts, whereas only the merits of a patent case are within the jurisdiction of this court. Congress intended this court to have the exclusive authority under § 1295 to decide the issue, necessarily an integral part of a case, whether a district court has jurisdiction to entertain a case under § 1338. Our holding is consistent with the framework set by Congress to provide one national Court of Appeals to hear all appeals from district courts in cases arising under the patent laws. Thus, in consideration of the statutory language, the legislative history and intent of the statutory scheme, we hold that we have jurisdiction to decide whether the district court had jurisdiction under § 1338.

## III

In 1969, the Supreme Court decided the landmark case of *Lear v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). *Lear* held that a licensee to a patent license agreement may not be estopped from asserting that the patent subject to the license is invalid. *Lear* changed the prior law in this regard on the basis of public policy. The Court said:

> The uncertain status of licensee estoppel in the case law is a product of judicial efforts to accommodate the competing demands of the common law of contracts and the federal law of patents. On the one hand, the law of contracts forbids a purchaser to repudiate his promises simply because he later becomes dissatisfied with the bargain he has made. On the other hand, federal law requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent.
>
> * * * * * *
>
> Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification. We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest in the typical situation involving the negotiation of a license after a patent has issued.

395 U.S. at 668–71, 89 S.Ct. at 1910–11. [Footnote omitted.] *Lear,* however, left unresolved the question when a federal court has jurisdiction of a licensee's claim of patent invalidity.

28 U.S.C. § 1338(a) grants exclusive jurisdiction to the federal courts in cases arising under the patent laws. The Declaratory Judgment Act, 28 U.S.C. § 2201 (1976),[3] provides potential litigants with an additional remedy. It allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration." Section 2201 does not extend federal jurisdiction. Thus, for a federal court to have jurisdiction of a declaratory judgment action in a patent suit where diversity jurisdiction is not present, it must first find that the case arises under the patent laws.

■ It is well settled that a case cannot "arise under" federal law where the claim is merely a defense to a state court action. *Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). In the instant case, this means there can be no federal jurisdiction if Bard is merely asserting a patent invalidity defense to the state court contract action brought by Schwartz.

In addition, the suit brought by Bard must also meet the constitutional requirement that there be a justiciable case or controversy. This requires a real and substantial dispute affecting the legal rights and obligations of parties having adverse interests. *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

Courts have interpreted the controversy requirement in the patent field to generally mean that the declaratory plaintiff has sufficient interest in the controversy and that there is a reasonable threat that the patentee or licensor will bring an infringement suit against the alleged infringer. Smith, *Foreclosure of Licensee Validity Challenges with Procedural Barriers: Federal Jurisdiction,* 61 JPOS 690, 697 (1979). *See, e.g., Japan Gas Lighter Association v. Ronson Corp.,* 257 F.Supp. 219, 150 USPQ 589 (D.N. J.1966).

The courts of appeals have split over whether absent diversity jurisdiction a licensee may bring a declaratory judgment action to declare the patent subject to the licensee invalid while the license is in effect. In *Thiokol Chemical Corp.,* 448 F.2d 1328, the Third Circuit held that while a license agreement is in effect, no threat of infringement is possible. In those circumstances the patent validity issue may only arise as a defense to a state contract action, over which federal courts have no jurisdiction. Once the license agreement was terminated, however, the *Thiokol* court held that the district court had jurisdiction under § 1338(a).[4] As stated by the district court in *Thiokol:*

> The purpose of a license agreement is to insulate those who pay for the use of patented processes or products from infringement charges and the burden of litigation. There are three situations only when a licensee could be charged with infringement: (a) the allegedly in-

---

**3.** 28 U.S.C. § 2201 (1976) provides:

*§ 2201. Creation of remedy*

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954 or a proceeding under section 505 or 1146 of title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

**4.** In *Thiokol* the Circuit Court considered two rulings of the district court. In the first, 313 F.Supp. 253, 165 USPQ 741 (D.Del.1970) the district court dismissed the declaratory judgment action. The court observed that while the license agreement was in effect the licensee could only be charged with breach of contract under the license agreement. In the second, 319 F.Supp. 218, 167 USPQ 724 (D.Del.1970), the district court denied the defendant's motion to dismiss the declaratory judgment action. At that time the license agreement had been terminated. Previous to that, the licensee was sued in state court for royalties assertedly due under the license agreement. The district court found there was a federal question controversy. Both holdings of the district court were affirmed by the Third Circuit.

fringing devices are not covered by the license; (b) the license has expired; or (c) plaintiff has repudiated the license.

313 F.Supp. 253, 255 (D.Del.1970). *See also Milprint,* 562 F.2d 418; *Product Engineering,* 424 F.2d 42; *Components, Inc. v. Western Electric Co.,* 318 F.Supp. 959, 167 USPQ 583 (D.Maine 1970).

The Second Circuit, on the other hand, has taken an opposing view. In *Warner-Jenkinson,* 567 F.2d 184, the court held that repudiation of a license agreement should not be a precondition to suit. The court said:

Under most licensing arrangements, as in the present case, withholding of royalty payments constitutes a material breach of the contract. A licensee who wishes to continue using the patented element cannot withhold royalty payments without laying himself open to large potential liability for infringement and an injunction against all future use of the patented substance. If forced to make the hard choice, many licensees will choose the less perilous course, and the patents under which they are licensed will remain uncontested. *Lear* established that removing restraints on commerce caused by improperly-held patents should be considered more important than enforcing promises between contracting parties. Thus, the seeming inequity of allowing a licensee to keep his license while he attacks the validity of the licensor's patent is outweighed by the public interest in placing no impediment in the way of those in the best position to contest the validity of the underlying patent.

*Id.* at 187–88. The court held that although the licensee had not ceased payment of royalties under the license agreement, there was still a federal controversy. The court said that nonpayment of royalties by the licensees would subject them to federal claims. It stated:

There is clearly a case and controversy here since the plaintiffs-licensees have an interest in proving patent invalidity and thereby escaping liability for royalties. The danger of collusive suits is no greater in this context than in any patent validity cases.

*Id.* at 187 n. 4. *See also Precision Shooting Equipment Co. v. Allen,* 646 F.2d 313, 210 USPQ 184 (7th Cir.1981); *Geni-Chlor International,* 580 F.2d 981; *Hanes,* 531 F.2d 585; *Medtronic, Inc. v. American Optical Corp.,* 327 F.Supp. 1327, 170 USPQ 252 (D.Minn.1970).

 We must choose the better view. We reject the blanket approach of *Thiokol* that there can never be an apprehension of a federal infringement suit and thus no controversy when a license is still in effect. To always require the termination of a license agreement as a precondition to suit would mean that a licensee must then bear the risk of liability of infringement. This would discourage licensees from contesting patent validity and would be contrary to the policies expressed in *Lear.* As stated in *Lear,* licensees are often the only ones with sufficient interest in a patent to contest its validity. For declaratory relief to be appropriate, the Supreme Court in *Wycoff* simply required that:

[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.

344 U.S. at 244, 73 S.Ct. at 240. These conditions may be met where there is a license agreement in effect. We therefore hold that an examination of the totality of the circumstances must be made to determine whether there is a controversy arising under the patent laws. We hold that appellant Bard, under the facts of this case, had a reasonable apprehension of an *infringement suit even though the license agreement was still in effect.* Thus, there was federal "arising under" jurisdiction under § 1338(a) and an actual controversy.

As stated, whether there is a federal controversy in the instant case can only be determined by an examination of the totality of the circumstances. Bard, the licensee, had ceased payment of royalties under the

agreement to the licensor and patentee Schwartz. This was a material breach of the agreement that, under the very terms of the agreement, enabled Schwartz to terminate the agreement.[5] Although Bard had ceased payment of royalties, its sublicensee Delmed continued to make the catheters subject to the Schwartz patent. Thus Schwartz could at any time take action against Bard by bringing an infringement suit. There was no action Bard could take to prevent such a lawsuit.

Furthermore, after Bard ceased payment of royalties, Schwartz filed suit in state court for recovery of the royalties and for greater royalties it claims are due under the agreement on account of the alleged assignment of the license to Delmed. Involvement in that litigation shows a willingness by Schwartz to enforce his patent rights. This is a factor to be considered in determining whether there is a threat of an infringement suit. *See, e.g., Components,* 318 F.Supp. 959; *Sargent Industries, Inc. v. Lear Siegler, Inc.,* 200 USPQ 251 (C.D.Cal. 1977). Demand for future royalty payments, as was made in this case, is also a factor indicative of a reasonable apprehension of an infringement suit.[6] *See Thiokol,* 319 F.Supp. 218, 167 USPQ 724 (D.Del. 1970). In addition, we note that Bard contends count 5 of the state court complaint, where Schwartz alleges that Delmed is selling a product covered by the Schwartz patent, is a claim under which Bard may be charged with active inducement of infringement and contributory infringement.

**5.** The agreement provides in pertinent part:
8(c) In the event BARD asserts invalidity of any of the said Patents within the scope of this Agreement and refuses to pay royalties on account of such asserted invalidity, then GRANTOR may terminate this Agreement as to the Patent or Patents as to which invalidity is asserted.
8(d) Upon failure of either party to carry out the provisions of this Agreement on its part to be performed, the injured party shall give sixty (60) days notice in writing to the party in default, which notice shall specify the default of said party. The party in default shall have such sixty (60) days in which to correct such default and, if corrected, the Agreement shall remain in full force and effect. If such default is not corrected within the said sixty

Appellee argues these factors are negligible in light of the affidavit he signed and submitted with his motion to dismiss the declaratory judgment action. An examination of the affidavit shows that its words were carefully chosen and did not negate the possibility of an infringement action. That affidavit said Schwartz had and has no intention of terminating the license agreement or suing for infringement. Intentions, however, may change over time. Schwartz did not say that he would not terminate the agreement and would not bring an infringement suit. Thus, under the terms of his own affidavit Schwartz was free to terminate the agreement at a time of his choosing and institute an infringement action. At oral argument appellee's attorney was asked whether he would affirmatively state that he would not bring an infringement suit. He would only say that on the facts presently known to him he would not sue. The facts presently known to appellee and his attorney are not indicated anywhere. Thus, Bard has a reasonable apprehension that Schwartz may bring an infringement action against it. *Cf. Wallace & Tiernan Inc. v. General Electric Co.,* 291 F.Supp. 217, 160 USPQ 663 (S.D.N.Y.1968). (Although defendant attested he would never sue plaintiff for infringement, actual controversy was found. Plaintiff's business was hurt by conduct and asserted legal claims of defendant, and other parties were unwilling or unable to bring suit.)

(60) day period, this Agreement shall automatically terminate at the expiration of such sixty (60) day period.

**6.** Other factors courts have relied on in finding a reasonable apprehension of infringement include actual or threatened suits against the declaratory plaintiff's customers, *Ciba-Geigy Corp. v. Minnesota Mining & Mfg. Co.,* 439 F.Supp. 625, 196 USPQ 548 (D.R.I.1977); lawsuits against other manufacturers of similar products, *Medtronic, Inc. v. American Optical Corp.,* 327 F.Supp. 1327, 170 USPQ 252 (D.Minn.1971); and notices of infringement in trade journals, *Treemond Co. v. Schering Corp.,* 122 F.2d 702, 50 USPQ 593 (3d Cir. 1941).

Last, we note that the affidavit signed by Schwartz did not foreclose him from instituting an infringement action against Delmed. In such a suit, Bard's attorney stated and appellee did not dispute that Bard would be likely to be held liable for any damages found to be owed by Delmed. In light of the totality of the circumstances, we find Bard has a reasonable apprehension of an infringement suit. Bard's declaratory judgment action was therefore not in defense of the state court action brought but in defense of an actual federal controversy "arising under" the patent law.

In conclusion, we hold that a patent licensee may bring a federal declaratory judgment action to declare the patent subject to the license invalid without prior termination of the license. We hold that there is a federal controversy in the instant case and that the district court therefore has jurisdiction over this case under 28 U.S.C. § 1338(a). This case is remanded to the district court for further proceedings in accord with this decision.

REVERSED AND REMANDED.