WILLIAMS GOLD REFINING COMPA-
NY, INCORPORATED, Plaintiff,

v.

SEMI–ALLOYS INCORPORATED,
Defendant.

Civ. No. 75–300.

United States District Court,
W. D. New York.

June 28, 1977.

Edwin T. Bean, Jr., Christel & Bean, Buffalo, N. Y., for plaintiff.

Richard B. Passen, Jaeckle, Fleischmann & Mugel, Buffalo, N. Y., for defendant; Laurence B. Dodds, Fort Collins, Colo., of counsel.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

Williams Gold Refining Company, Incorporated ("Williams") brings this action pursuant to 28 U.S.C. § 2201 for a declaratory judgment that United States Patent No. 3,823,468 ("Patent '468") owned by defendant Semi-Alloys Incorporated ("Semi-Alloys") is invalid or that, if valid, it is not infringed by plaintiff.

Defendant has moved pursuant to Fed.R. Civ.P. rule 56 for summary judgment on the ground that there is no justiciable controversy because plaintiff's fears of an infringement suit against it or one of its customers are unfounded. In the alternative, defendant moves pursuant to 28 U.S.C. § 1404(a) for a stay or transfer of this action to the Northern District of Texas. There is presently pending in that court a prior suit brought by Semi-Alloys against Metalized Ceramics Corporation ("MetCeram") wherein Semi-Alloys charges MetCeram with infringement of Patent '468. MetCeram is a company to which Williams supplies items allegedly covered by said patent.[1] Pending a decision on these motions, plaintiff moved for a preliminary enjoinder of the carrying forward of the Texas action.

Patent '468 covers a method of making hermetically sealed containers having within them semiconductor devices. The claimed method involves "fabricating an hermitically [sic] sealed container consisting of a body having a cavity for receiving a semi-conductor device and a conductive cover therefor, wherein a preformed ring of heat fusible material is superimposed on the cover in registry with its periphery, the ring is engaged with at least one pair of spaced electrodes, and a pulse of current is passed through the electrodes, the ring and the cover thereby producing an effective attachment between the ring and the cover adjacent each of the electrodes, the cover thereafter being assembled within the container body."[2] Because Patent '468 is a method patent, it is the *series* of steps comprising the process that is central and only a replication of every step in substantially the same operative order constitutes infringement. See, e. g., *Engelhard Industries, Inc. v. Research Instrumental Corp.*, 324 F.2d 347 (9th Cir. 1963). However, infringement of a method patent does not require that the alleged infringer personally duplicate every step. One who actively induces or knowingly contributes to the infringement is liable. 35 U.S.C. § 271 declares what constitutes patent infringement and reads in pertinent part as follows:

"(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

"(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

---

**1.** On July 25, 1975, MetCeram filed a motion in the Northern District of Texas, Dallas Division, for a stay of that action pending a decision in this case or a transfer of that action to Rhode Island. (The Texas action could not have been transferred to this district because under 28 U.S.C. § 1400(b), venue is proper only " * * where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.") On November 24, 1975, the Honorable W. M. Taylor, Judge of the United States District Court for the Northern District of Texas, denied both motions.

**2.** Quoted from Williams's patent attorneys' opinion letter dated October 3, 1974, which letter is Exhibit B to John Williams's affidavit (sworn to November 25, 1975) and part of Exhibit G to the affidavit of Norman Hascoe (sworn to October 8, 1975 and annexed to Semi-Alloys's Notice of Motion for summary judgment).

"(c) Whoever sells * * * a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

None of the parties who are involved with the infringement of Patent '468 alleged herein personally practices every step of the method. The ultimate users of the cover and container assembly are the manufacturers of the semiconductor devices which are placed in the assembly. Each of these manufacturers establishes its own design specifications for its cover and container assemblies. Specifications include the dimensions of the cover and container, the composition of the solder ring and the number of "tacks" to be used in securing the solder ring to the cover. The semiconductor manufacturer then arranges with parts manufacturers to make the containers and covers to those specifications. Rather than dealing with separate sources for the containers and cover, some manufacturers purchase both from a single source. Such a source could produce both containers and covers, produce one of the items and subcontract out for the other or subcontract out both items. MetCeram produces its own containers and contracts with others, including Semi-Alloys or Williams, for the production of the covers with the fusible rings attached. Semi-Alloys also produces covers directly for the semiconductor manufacturers.

Because it is the semiconductor manufacturer's specifications which control the type of cover and container assembly produced, the most effective way for Semi-Alloys to stop infringement of its patent would be to sue the semiconductor manufacturers. Semi-Alloys allegedly is reluctant to do this because all such manufacturers order parts from Semi-Alloys and economic realities prevent Semi-Alloys from suing its major customers. Of the remaining possible infringers, Semi-Alloys has chosen to bring suit against MetCeram, a party which supplies the cover and container pairs to semiconductor manufacturers.

Semi-Alloys filed its suit against MetCeram June 4, 1975 and Williams, in response thereto, filed this action against Semi-Alloys July 23, 1975. Usually, the first-filed suit should have priority absent the showing of a balance of convenience favoring the later action or unless there are special circumstances justifying giving priority to the latter. *William Gluckin & Co. v. Int'l Playtex Corp.,* 407 F.2d 177 (2d Cir. 1969). One such special circumstance is the so-called "customer-action" where the first-filed suit is against a customer of the putative infringer. Semi-Alloys argues that this is not such a situation inasmuch as Williams is a supplier of parts to MetCeram who is the manufacturer. Williams counters that *it* is the manufacturer and that MetCeram is the customer for Williams's covers.

The "heart" of the invention in Patent '468 is the method of attaching the ring to the cover, but I do not imply that said attachment is the measure of the invention. The claimed invention includes all of the assembly steps. Likewise, Semi-Alloys's argument that MetCeram's employees who design the covers and containers would have the greatest knowledge of the infringement of the patent is unpersuasive. Patent '468 is not a design patent; it is a method patent. The design of the cover and container is not the measure of the patent. As stated before, to infringe a method claimed in the patent there must be a replication of every step in substantially the same operative order. If the overall method falls outside the patent grant, no party in a multi-party chain of manufacturing can be held liable for infringement, no matter how similar the step in which that party participated is to a step in the patented method. *Cf., Aro Mfg. Co. v. Convertible Top Co.,* 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961). Nevertheless, the preeminence of the construction of the cover and ring subassembly affects any decision involving equitable considerations.

Semi-Alloys's characterizations of Met-Ceram as the "manufacturer" and Williams as the "parts supplier" are misconceived. Williams is the manufacturer of the cover and ring subassembly for which MetCeram is the customer. Although Semi-Alloys places great importance on the facts that there is no such thing as an "off-the-shelf" cover and that Williams works from specifications supplied by MetCeram, there is no allegation that the procedure used by Williams to attach the ring to the cover is specified by MetCeram.

 To support jurisdiction of a declaratory judgment action, the plaintiff must have a well-grounded fear that should he continue or commence the activity in question, he or one or more of his customers face an infringement suit. *Japan Gas Lights Ass'n v. Ronson Corp.,* 257 F.Supp. 219, 236–43 (D.N.J.1966), citing *Dewey & Almy Chem. Co. v. American Anode, Inc.,* 137 F.2d 68 (3d Cir.), *cert. denied,* 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943). There is a sufficient manufacturer-customer relationship between Williams and MetCeram to create a justiciable controversy to support jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

Whether such relationship coupled with the balance of convenience supports a priority for the second-filed suit by Williams does not immediately follow. The facts in the instant action differ from those in *William Gluckin & Co. v. Int'l Playtex Corp., supra.* Therein, Gluckin, plaintiff in the therein second-filed action, was the *sole* manufacturer of an allegedly infringing brassiere. Gluckin's principal place of business was in New York, where the second-filed action was brought, its manufacturing plants were in Pennsylvania and its design facility was in New York City. Playtex, plaintiff in the first-filed action and defendant in the second-filed action, was the owner of the allegedly infringed patent. Playtex's principal place of business was in New York City and its manufacturing plants were in Georgia and its design facilities were in New Jersey. F. W. Woolworth & Co., defendant in the first-filed action,

was a customer for Gluckin's products and sold them nation-wide, including Georgia where the first action was brought. On that fact pattern, the district court found fourteen factors supporting the priority of the second-filed action and only three supporting the earlier litigation.

In this action, I find that the following balance of convenience factors support priority for the second-filed action:

1. Williams is a New York Corporation with its principal place of business in Buffalo, New York.

2. Semi-Alloys is a New York Corporation with its principal place of business in Mount Vernon, New York.

3. MetCeram is incorporated in Rhode Island.

4. New York is the resident state of the inventor, Norman Hascoe.

5. Solder rings are made by Williams in Buffalo, the covers are obtained by Williams from Advance Industries of Attleboro, Massachusetts and the covers and rings are subassembled by Electroweld Corporation of Hawthorne, New Jersey, which ships the subassembled units to Williams in Buffalo for inspection, packaging and shipment.

6. MetCeram is a customer for Williams's cover and ring subassemblies.

7. While MetCeram furnishes the design for the cover and ring subassembly, the process of attachment is not indicated in the specifications.

8. Attachment of the ring to the cover, the "heart" of the method patent, is practiced by Electroweld Corporation at the direction of Williams.

On the other hand, the priority of the first-filed action is supported by the following:

1. It was filed first.

2. Contributory infringement sale of containers and covers took place in Texas.

3. MetCeram, while a customer for the cover and ring subassembly, is more than simply a retailer or wholesaler inasmuch as it is involved in the design of the cover and ring and manufactured the container

in Texas, an element in practicing the method patent.

4. MetCeram employees with knowledge of possible infringement live in Texas.

5. Semiconductor manufacturers, who are ultimate users of the container and cover pairs, are in Texas and California.

6. MetCeram's motion in the Northern District of Texas for a stay pending a decision in this declaratory judgment action or in the alternative for a transfer to Rhode Island was denied.

7. MetCeram is not subject to suit in this district.

In deciding between competing jurisdictions, the balancing of convenience is not based upon a numerical comparison of factors but is left to the sound discretion of the district courts. *Mattell, Inc. v. Louis Marx & Co.,* 353 F.2d 421, 424 (2d Cir. 1965), *petition for cert. dismissed,* 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966). The parties have not furnished anything which persuasively indicates whether Texas or New York is the better forum for deciding the validity of Patent '468. As to the determination of whether Patent '468 is infringed by the activities of MetCeram and/or Williams, the balance is not decidedly tipped either toward New York or Texas. Infringement of a method patent is dependent upon the acts of all contributing infringers. In this case, the activities encompass Massachusetts, New Jersey, New York and Texas. While apparently the activity upon which a decision as to infringement will turn occurred in New Jersey—*i. e.,* the attachment of the ring to the cover—that factor is insufficient, even when taken together with the other considerations, to warrant the choice of New York over Texas.

Williams's allegations of "unclean hands" or "race to the courthouse tactics" by Semi-Alloys is not well-founded. Although Semi-Alloys was aware that Williams was actively interested in any action taken by Semi-Alloys to enforce Patent '468, Semi-Alloys's choice of MetCeram was not for the harassment of Williams or without a justifiable reason.

The interrelation among the actors and the type of patent involved points toward the two actions being tried together and away from the staying of one or the other. Balancing the convenience of the parties and witnesses and according due regard to the weight given to the initial forum, a decision to transfer this declaratory judgment to the Northern District of Texas would result in a conservation of judicial resources and a comprehensive disposition of this litigation.

It is hereby,

ORDERED that this action be transferred to the United States District Court for the Northern District of Texas; and it is further hereby

ORDERED that Semi-Alloys's motions for summary judgment and for a stay of this proceeding be denied; and it is further hereby .

ORDERED that Williams's motion for preliminary injunction be denied.