**CIBA–GEIGY CORPORATION et al.**

v.

**MINNESOTA MINING AND MANUFACTURING COMPANY.**

Civ. A. No. 77–503.

United States District Court,
D. Rhode Island.

Oct. 27, 1977.

George M. Vetter, Jr., Providence, R.I., for plaintiffs.

Edward F. Hindle and William P. Robinson, III, of Edwards & Angell, Providence, R.I., for defendant.

## OPINION

PETTINE, Chief Judge.

This is an action for declaratory judgment filed on August 10, 1977 by Ciba-Geigy Corp., with Ansul Co. and Able Fire and Safety Equipment, Inc. as coplaintiffs, against Minnesota Mining and Manufacturing Co. (3M). Plaintiffs seek a declaration that their making, using and selling a certain fire-fighting foam, Ansul AFFF,[1] and its component ingredients do not infringe patents owned by defendant, because said patents are invalid, void and unenforceable. Plaintiffs seek a preliminary injunction against 3M to halt pending patent litigation,[2] filed by 3M on July 1, 1977 (forty days before this suit) in the Northern Dis-

---

1. AFFF is a generic name for "aqueous film forming foam." Its special fire-fighting qualities arise from the fact that it, unlike water, floats on oil and gasoline.

2. That action is *Minnesota Mining and Mfg. Co. v. Ansul Co. and Able Fire and Safety Equipment, Inc.*, C.A. No. 77-2381 filed in the District Court of the Northern District of Illinois on July 1, 1977.

trict of Illinois against Ansul and Able but not against Ciba. In that suit, 3M alleges that Ansul's proposed sale of Ansul AFFF to Able infringes 3M's patents. Before this Court now is that motion to enjoin defendant from continuing the Illinois litigation and the cross-motions of 3M to dismiss Ciba from this suit for want of a case or controversy with it and to stay this suit pending the outcome of the Illinois litigation or to transfer it to the Illinois court.

Ciba is incorporated and does business in New York and has its principal manufacturing facilities in Rhode Island for the main components, hydrocarbon and fluorocarbon surfactants, of the substance in issue here. Ansul, a multinational corporation, known for its manufacture of fire-fighting equipment, for its testing facilities for such equipment, and for its training program for fire-fighters, has its principal place of business in Wisconsin. Ciba has formed relevant agreements, beginning in 1974, with Ansul in New York for the transmission of know-how and the sale of ingredients for the manufacture of the fire-fighting foam Ansul AFFF. Ciba ships the major ingredients, FOB Cranston, Rhode Island, to Ansul in Wisconsin where, without Ciba's supervision, Ansul blends the surfactants with water and certain "stabilizers", packages the foam and sells it as its own product. Able has contracted with Ansul in Wisconsin for the sale of Ansul AFFF.

Minnesota Mining and Manufacturing Co. is incorporated in Delaware and does business in Rhode Island, which is therefore proper venue for this action. 28 U.S.C. § 1391(c). It holds patents on certain AFFF substances and between 1963 and 1976 had a relationship with Ansul for the development and sale of an AFFF product. Ansul appears to have contributed know-how and testing facilities to the development of 3M's AFFF compound and was 3M's exclusive distributor for AFFF from 1964-1968 and a non-exclusive distributor until February 4, 1976.

### Motion to Dismiss

First, and easiest of disposition, is the denial of 3M's motion to dismiss Ciba from this suit for want of a case or controversy.

By contract with Ciba, Ansul is the exclusive producer of Ansul AFFF for industrial purposes in this country. 3M asserts that this makes Ansul an exclusive producer for which Ciba is only a supplier. 3M asserts that the Ciba surfactants are mere ingredients which infringe no 3M patents and which are alternatively available to Ansul from Dupont and other companies: the mere sale of components of a combination patent does not constitute infringement.

In support of this characterization of Ciba as a mere supplier, 3M cites *Aralac Inc. v. Hat Corp.*, 166 F.2d 286 (3rd Cir. 1945). *Aralac* refused to permit a supplier to bring a declaratory judgment as to noninfringement. But in *Aralac* the plaintiff sold a staple commodity not necessarily used by purchasers in a process that would infringe the defendant's patents. In this case, it appears that Ciba manufactures the ingredients expressly for use in AFFF compounds, and that their sale necessarily creates a conflict with 3M. See *Holmes v. Struthers Scientific and International Corp.*, 268 F.Supp. 122, 124 (W.D.Penn.1967) (despite refusal of patent-holder to sue supplier of essential ingredients, controversy exists because the ingredients are necessarily used in an infringing product); cf. *Dewey and Almy Chemical Co. v. American Anode, Inc.*, 137 F.2d 68, 70 (3rd Cir. 1943), cert denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943); *Shumaker v. Gem Mfg. Co.*, 311 F.2d 273, 276 (7th Cir. 1962); *Windmöller v. LaGuerre*, 284 F.Supp. 563, 565 (D.D.C.1968).

Moreover, Ciba asserts that it does more than induce and contribute to Ansul's blending of Ansul AFFF; that it too mixes the ingredients into Ansul AFFF, in Cranston Rhode Island, to test the effectiveness of each batch it ships; that it presently manufactures other AFFF compounds in Rhode Island; that, since August 15, 1977, it has produced 128,000 pounds of an AFFF substance; that such other AFFF substances differ from Ansul AFFF only in the

combination of surfactants and in the percentage of water and stabilizers employed; and that it has contracts to develop and produce AFFF for home use.[3] Ciba asserts that, because it manufactures AFFF for other purposes than for sale to Ansul, a resolution of the 3M-Ansul controversy cannot dispose of the more fundamental controversy between 3M and Ciba, both manufacturers of AFFF compounds and competitors of each other. It is, of course, possible that 3M intends to litigate only the Ansul form of AFFF compounds and is completely uninterested in the variations on that theme which Ciba manufactures for different markets. But the Illinois suit warns Ciba and its customers and potential customers sufficiently to threaten its economic interests. That is enough to constitute a controversy and justify this instant suit.

### Motion to Enjoin

In support of its motion to enjoin, Ciba insists that its controversy with 3M subsumes the 3M–Ansul litigation, and that only this suit and not the Illinois suit can settle all issues in the controversy, and that it is the principal party in interest and the "driving force" behind Ansul AFFF in the Illinois litigation. It asserts that it developed the compound marketed as Ansul AFFF, that it persuaded Ansul to purchase it, that it sells the essential ingredients of Ansul AFFF, fluorocarbon surfactant and hydrocarbon surfactant, that Ansul mixes these materials into a foam pursuant to Ciba's formula and that by contract with Ansul it must litigate any patent infringement suits. These factors do make Ciba a principal in the Illinois litigation.

3M admits that Ciba by contract must litigate any claims against Ansul and its customers in patent infringement suits arising out of AFFF products and must indemnify them for any legal judgments. 3M denies, however, that this makes of Ciba a principal in the 3M-Ansul controversy. Ciba correctly argues to the contrary. *Cf.*

*Joseph Bancroft and Sons Co. v. Spunize Co. of America,* 268 F.2d 522, 523 (2nd Cir. 1959) (contract of indemnity for patent litigation with a licensee creates controversy between manufacturer and patent-holder). 3M characterizes Ciba's interest in this case arising from its indemnity contract as a mere economic and not legal interest and therefore not susceptible of protection by this Court. On this last argument, 3M is clearly wrong, for the law protects just such an economic interest of producers. *See Codex Corp. v. Milgo Electronic Corp.,* 553 F.2d 735, 738 (1st Cir. 1977); *cf. Wallace and Tiernan Inc. v. General Electric Co.,* 291 F.Supp. 217, 220 (S.D.N.Y.1968) (no threat of suit needed to create controversy with patent-holder); *Sweetheart Plastics Inc. v. Illinois Tool Works Inc.,* 439 F.2d 871, 874 (1st Cir. 1971); *Alfred Hoffmann Inc. v. Knitting Machines Corp.,* 123 F.2d 458, 461 (3rd Cir. 1941); *Sticker Industrial Supply Corp. v. Blaw-Knox Co.,* 367 F.2d 744, 747 (7th Cir. 1966).

Because it is the principal party in interest in the Illinois suit and must defend what is, in fact, its AFFF product, Ciba claims that 3M has deprived it of its venue rights, as determined by Congress in 28 U.S.C. § 1400(b), by bringing the Illinois suit in a forum other than where Ciba is incorporated or where it both regularly does business and allegedly infringes. Ciba therefore seeks an injunction against 3M's litigating in the Illinois forum so that all matters may be put in issue in this instant suit.

Ciba argues in support of its motion to enjoin that this case is governed by *Codex Corp. v. Milgo Electronic Corp.,* 553 F.2d 735 (1st Cir. 1977). In that case, the First Circuit created an exception for patent litigation to the rule that a first-filed case takes precedence over a subsequently filed suit in another court. It established a rebuttable presumption that a manufacturer's declaratory judgment action, in its home forum, at least if brought no later

---

**3.** Ciba claims to have a contract with the Gillette Co. of Boston to develop and produce an AFFF substance for home extinguishers. 3M disputes that Gillette intends to engage in any development of home extinguishers.

than promptly after a customer action, should take precedence over a mere customer action in a jurisdiction in which the manufacturer could not be sued.

> *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d at 738. (footnote omitted). *See Mattel Inc. v. Louis Marx Co.*, 353 F.2d 421, 424 n. 4 (2nd Cir. 1965) *cert. denied* 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546; *General Tire and Rubber Co. v. Isocyante Products, Inc.*, 270 F.Supp. 868 (D.Del.1967), *aff'd*, per curiam, 391 F.2d 936 (3rd Cir. 1968) *cert. denied* 393 U.S. 842, 89 S.Ct. 122, 21 L.Ed.2d 112 (1968). To enforce this presumption, an injunction against the defendant from prosecuting the customer suit may issue. The "important" consideration which justifies this exception

> is the recognition that, in reality, the manufacturer is the true defendant in the customer suit. . . . it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.

> *Codex* at 737–38

The defendant contends that Ciba can perfectly well protect all its real interests in AFFF substances by filing a declaratory judgment in Illinois and consolidating the two cases. This leads 3M to argue that the *Codex* rule applies only where the plaintiff manufacturer is foreclosed from settling all issues with the defendant patent-holder because the plaintiff cannot sue or be sued in the district where the defendant patent-holder has commenced its customer suit. In support of this, it points out that the *Codex* plaintiff could neither be sued in Kansas where the defendant had sued its customer nor could it sue the defendant for declaratory judgment. By contrast, Ciba can sue

3M in Illinois, though it could not be sued there.

But under this logic, a manufacturer should be forced to intervene, pursuant to Fed.R.Civ.P. 24, wherever a customer suit is brought, since it might thereby fully litigate all relevant matters. *Codex* found this right to intervene insufficient to protect the venue rights of a manufacturer. *Id.* at 738. 3M urges, however, that logic only requires that a manufacturer, in protection of its interests, be forced to enter (by suing or intervention) those forums that Congress in the venue statutes, 28 U.S.C. §§ 1391(c), 1400(b), determined were appropriate. The defendant insists that, so long as a patent-holder's customer suit is in a forum in which the manufacturer could sue or be sued, such a forum is fair. 3M quotes *Codex* to this effect: a manufacturer should not be compelled to

> renounce its right not to be sued in a forum where it could not have been sued for infringement, 28 U.S.C. § 1400(b), and to which its declaratory judgment action could not have been transferred, 28 U.S.C. § 1404(a).

> *Codex* at 738

But in laying down its general presumption on venue in patent litigation, the First Circuit spoke broadly in protection of a plaintiff manufacturer's choice of forum and gave that choice precedence over "a mere customer action in a jurisdiction in which the manufacturer *could not be sued*". *Id.* (emphasis added). The rule reads "be sued" and not "sue or be sued". The manufacturer is given this right to choose when the patent-holder has tried to avoid the limitations of § 1400(b) by suing a party with a lesser interest in the patent litigation in a forum where the manufacturer could not be sued.[4] The First Circuit explains this special solicitousness of the

---

4. The patent venue statute, 28 U.S.C. § 1400(b), permits suit against an infringer only where it "resides" or has infringed. The Supreme Court has read "reside" to mean "is incorporated" and has refused to employ the broader definition of corporate residence found in 28 U.S.C. § 1391(c) in interpreting § 1400(b). *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957).

Thus the general venue statute is not to be read in conjunction with the patent venue statute to broaden appropriate venue. But to read into the *Codex* rule "sue and be sued" is to do just that. *Codex* attempts to realize Congressional intent in § 1400(b) by protecting the manufacturer's § 1400(b) rights not to be sued in certain fora. Limiting that protection only as to fora in which the manufacturer could not sue or be

manufacturer's choice by noting that the right to choose a forum is "important, particularly in patent litigation . . . where it is well known that the patent bar believes that the hospitality accorded patents varies markedly from circuit to circuit". *Id.* (footnotes omitted).

It is in this context that the characterization of Ciba as manufacturer, as the plaintiffs would have it, or as supplier as the defendant claims, is crucial. For if Ciba is the manufacturer and Ansul is the customer, then there is little doubt that this suit for declaratory judgment should proceed here and an injunction should issue.[5]

Obviously, the facts of this case are not on all fours with *Codex*. Able is a mere customer but Ansul is not. Ansul is, for a large sector of the market, an exclusive, but dependent, producer and seller of the substance in issue. It blends, under its own physical control but pursuant to Ciba's formula, the major ingredients supplied it. Any other arrangement, however, would be impractical and require Ciba to ship a product, which is over 90 per cent water, across country.

3M's prior relationship with Ansul clarifies Ansul's position in the market. While more than a mere customer, Ansul has depended first on 3M and now on Ciba for the formula and essential ingredients of its fire-fighting foam. 3M would no doubt prefer Ansul as its partner-customer if it could banish Ciba. Its quarrel is at bottom, then, not with Ansul but with Ciba whose formula, know-how and ingredients seem to have permitted Ansul to sever its alliance with 3M.

Were it only a matter of furthering those purposes expressed in the *Codex* case, this Court would issue an injunction. This would, in the spirit of *Codex,* protect the venue rights of the real party in interest, who as "a simple fact of life . . . must protect its customers". It would deprive 3M of a forum with only few contacts to this patent controversy. It would serve the public interest in judicial economy, *see Leesona Corp. v. Duplan Corp.,* 317 F.Supp. 290 (D.R.I.1970) by permitting a complete adjudication of the controversy in one case and would provide a fast determination of a controversy which threatens a competitive market, *see Windmöller v. LaGuerre,* 284 F.Supp. at 565. Such a firm and broad application of *Codex* should, "in the long run, diminish forum shopping and the attendant wasteful pre-trial skirmishing" of patent litigation. *Codex* at 740.

However, *Codex* raises its presumption only on behalf of a "manufacturer" as against a first-filed "customer suit" but does not create such a presumption on behalf of a principal party in interest. The term "make", and by analogy "manufacture" and "manufacturer", has been given a precise and limited meaning by the Su-

---

sued, is to multiply by reference to § 1391 the available fora beyond what § 1400(b) permits. This *Fourco, supra,* refused to do.

**5.** Ciba easily meets the other requirements of the *Codex* test for issuance of an injunction.

a) With Ciba's manufacturing plant in Cranston, Rhode Island and its principal place of business in Ardsley, New York, 160 miles from Providence, this constitutes a "home forum."

b) It timely filed this action, forty days after 3M filed and 33 days after Ansul had received notice. This is "no later than promptly." *Codex*, 553 F.2d 735, 738 n. 5.

c) Ciba could not have been sued in Illinois pursuant to 28 U.S.C. § 1400(b). It does not reside there, its state of incorporation being New York, *see Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). Nor is it the case that, in Illinois, Ciba "has committed acts of infringement and has a regular and established place of business," 28 U.S.C. § 1400(b). Its regular place of business in Illinois does not deal in fire-extinguishing compounds. According to affidavits, Ciba has not sold fire-fighting compounds nor made any contracts there with regard to these matters nor acted so as to contribute to infringement in Illinois.

d) *Codex* recognizes that special circumstances may rebut the presumption in favor of the manufacturer's forum choice such as the patentee's convenience or its "special interests," for example, in reaching a party with assets. *Codex* at 738 n. 6. In this case, 3M reasonably argues that Illinois is more convenient for travel than Rhode Island; but it does not explain any special interests in Illinois, except that sale of an alleged infringing product to customer Able occurred there. Ciba in fact disputes that Illinois is a valid venue for the other suit, claiming that no sale of Ansul AFFF has yet occurred there.

preme Court. This Court must presume that the *Codex* Court employed that meaning. In *Deepsouth Packing Co., Inc., v. Laitram Corp.*, 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972) reh. denied 409 U.S. 902, 93 S.Ct. 94, 34 L.Ed.2d 165, the Court was faced with an interpretation of the word "make" in the patent infringement statute, 35 U.S.C. § 271(c).[6] In that case the district court had given an injunction against the defendant for infringing a combination patent by making and selling a shrimp deveiner in the United States. But it upheld the defendant's right to make the parts of the deveining machine, to sell them to foreign buyers, and to have those buyers assemble the parts and use the machines abroad, although such assembly took less than one hour. The district court found that the sale of components did not constitute "making" the patented item. The circuit court reversed, finding this definition of making "artificial" and "technical". The Supreme Court reversed and found that

> We cannot endorse the view that the "substantial manufacture of the constituent parts of (a) machine" constitutes direct infringement when we have so often held that a combination patent protects only against the operable assembly of the whole and not the manufacture of its parts.

*Id.* at 528, 92 S.Ct. at 1707.

Because the defendant did not make the product in this country and because it engaged in no contributory infringement, the assembly of the infringing machine taking place abroad beyond the reach of the statute, the defendant was free to engage in its end-run around the plaintiff's patent.

▮ 3M claims only that the blend constitutes infringement; no party alleges that the individual chemicals infringe. Like the defendant in *Deepsouth,* Ciba provides the parts, the directions for assembly and the inducement but that does not make a manufacturer.

6. "c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially

Without the *Codex* presumption, the rule favoring the first-filed suit must prevail and no injunction will issue.

### Motion to Transfer

▮ Thus, this Court is faced with 3M's motion to stay this suit or to transfer it to the Illinois forum where it might have been brought, 28 U.S.C. § 1404(a). It appears that that forum bears little relationship to the present litigation and is especially convenient only to 3M's counsel, which is inconsequential to a determination to transfer. Nonetheless, it would be wasteful of judicial resources to permit two suits to continue and to encourage Ciba to litigate only the Ansul AFFF issue in the Illinois forum by the promise of a subsequent suit here. This Court will therefore transfer this suit to the Northern District of Illinois where the two cases will presumably be consolidated and will defer to that court's determination of any future motion to transfer that consolidated case to a more appropriate forum for this controversy.

An order will be drafted accordingly.

adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).