Leonard R. KAHN, Plaintiff,

v.

**GENERAL MOTORS
CORPORATION, Defendant.**

No. 88 Civ. 2982 (JMW).

United States District Court,
S.D. New York.

Jan. 13, 1989.

Samuel Weisbard, McDermott, Will & Emery, Chicago, Ill., James Maune, Brumbaugh, Graves, Donohue & Raymond, New York City, for HRI.

Leonard R. Kahn, New York City, pro se.

Robert Cummins, Katten, Muchin & Zavis, Chicago, Ill., Roy Reardon, Michael Corrigan, Simpson, Thatcher & Bartlett, New York City, for Gen. Motors.

### MEMORANDUM AND ORDER

WALKER, District Judge:

On April 29, 1988, plaintiff Leonard Kahn ("Kahn"), filed this suit against General Motors Corporation ("GM") charging that GM manufactures and sells AM stereo receivers that contain a technology component that infringes a Kahn patent ("patent '994"). On May 27, 1988, Motorola filed a declaratory judgment action against Kahn and Hazeltine Research, Inc. ("HRI") in the Northern District of Illinois, alleging that the '994 patent is invalid, unenforceable, and not infringed by Motorola or by receiver manufacturers, such as GM, that incorporate Motorola's integrated circuit MC13020P (the "Motorola technology") into their AM receivers. *Motorola, Inc. v. Hazeltine Research, Inc. and Leonard Kahn*, 88 Civ. 4663 (filed May 27, 1988) (N.D.Ill.). The case is now before this Court on GM's motion to stay this action pending the outcome of the Chicago action. For the reasons stated below, the motion is granted.

### I. *Background*

In 1977, Kahn and Hazeltine Corp. (the parent of HRI) contracted to jointly promote an AM stereo broadcast system, and exploit the Kahn '994 patent rights. Motorola App.Ex. 1 & 2.[1] In 1980, Kahn transferred the agreements involving the ownership of the Kahn '994 patent licensing rights and obligations to HRI. *Id.*, Ex. 3. This transfer gave HRI the sole right to control the initiation of litigation under the Kahn '994 patent.

As part of its ongoing relationship with Kahn, HRI tested and evaluated Motorola's integrated circuit MC13020P in radio receivers to determine whether it infringed on Kahn's patent '994. This Motorola technology consists of electronic circuits that correct distortions occurring in AM stereo radio signals at the point of reception. Motorola customers, including GM, install these devices in certain radio receivers in automobiles. On June 5, 1985, HRI's Chairman, Stephen Ronzheimer, wrote to Kahn that as part of its patent enforcement efforts, HRI "contacted all companies known to be selling in the U.S. so-called 'single-system' radio receivers which incorporate integrated circuit (IC) MC13020P ... and which are designed to properly decode in stereo only Motorola AM stereo system broadcasts ..." The Ronzheimer letter, the validity of which has not been disputed,[2] listed 23 Motorola customers that HRI contacted, including GM, Ford, Chrysler, Nissan, Mitsubishi and Volkswagen. Motorola App. Ex. 4.

---

**1.** Reference to Exhibits 1 & 2, Motorola's Brief in Opposition to Dismiss, *Motorola v. Hazeltine*, 88 Civ. 4663 (N.D.Ill.). Kahn has not challenged the validity of these exhibits.

**2.** The Court notes that Kahn has been permitted to submit numerous replies and sur-replies to GM's submissions.

On June 14, 1985, HRI surrendered to Kahn all of its rights under the '994 patent to challenge the Motorola technology as incorporated in radio receivers. Thus, the result of the 1980 and 1985 transfers is that HRI apparently owns and possesses the exclusive litigation rights under the '994 patent except as to the Motorola technology, whereas Kahn apparently owns and possesses litigation rights to assert the '994 patent in litigation pertaining to the Motorola technology, including litigation against Motorola's customers. The 1985 transfer from HRI to Kahn may have been made in contemplation of this litigation since at that time, HRI "took the position that single-system AM Stereo radios using this particular component [the Motorola component] infringed the '994 patent." [3]

On April 29, 1988, Kahn filed this suit against GM for alleged infringement of patent '994. The action seeks to enjoin the manufacture of GM radio receivers that utilize the Motorola technology. On May 27, 1988, Motorola initiated a declaratory judgment action in the Northern District of Illinois against HRI and Kahn challenging the validity of the '994 patent and claiming that neither Motorola nor its customers, including GM, infringed the patent. GM has moved for this Court to stay the New York action pending determination of the Chicago action.

## II. *Discussion*

### A. *The Test for Staying a Patent Action*

The general rule in this Circuit is that the suit which is filed first shall have priority over later filed actions. *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177 (2d Cir.1969); *Columbia Pictures, Inc. v. Schneider*, 435 F.Supp. 742 (S.D.N.Y.1977); *Williams Gold Refining Co. v. Semi–Alloys, Inc.*, 434 F.Supp. 453 (W.D.N.Y.1977). The plaintiff's choice of forum may only be disturbed "by a showing of balance of convenience in favor of the second action, ... or ... special circumstances which justly give priority to the

second." *Gluckin, supra,* 407 F.2d at 178 (citations omitted).

■ In deciding between competing jurisdictions, courts often have stated that the balancing of convenience should be left to the sound discretion of the district courts. *Gluckin, supra,* 407 F.2d at 178. Although the power to grant a stay is an inherent part of a court's authority to control its own calendar, *Landis v. North American Co.,* 299 U.S. 248, 253–54, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936), a court is under a duty to consider every factor bearing on the reasonableness of a stay. The Court must examine the interests of the competing parties as well as the public interest in judicial economy. *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1951); *Mattel Inc. v. Louis Marx & Co.,* 353 F.2d 421, 423 (2d Cir. 1965), *cert. denied,* 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966).

■ The fact that this case was the "first-filed" does not end our analysis; it begins it. While the first-filed rule may ordinarily be a prudent one, "it is so only because it is sometimes more important that there be a rule than that the rule be particularly sound." *Codex Corp. et al. v. Milgo Electronic Corp.,* 553 F.2d 735, 737 (1st Cir.1977). Accordingly, this general rule has two widely recognized exceptions derived from the Second Circuit's opinions in *Mattel, supra,* 353 F.2d 421, and *Gluckin, supra,* 407 F.2d 177. The first of these exceptions involves the case where the selection of the forum in the first case is solely the product of forum shopping. *See Rayco Manufacturing Co. v. Chicopee Manufacturing Co.,* 148 F.Supp. 588, 593–94 (S.D.N.Y.1957). Defendants have not presented and substantiated a claim that Kahn is forum shopping. Thus, this exception is not applicable.

■ The second exception, arising frequently in patent litigation, is the so-called "customer action" exception—that is, if the first filed suit is against a customer of the alleged infringer and a later action is filed

---

**3.** HRI made this statement in a letter to Judge Leisure, dated June 20, 1988.

by the manufacturer of the accused device, the manufacturer's suit, even though filed at a later time, will be given priority under this rule. *See, e.g., Gluckin, supra,* 407 F.2d at 178 (Woolworth was a mere customer of brassieres manufactured by Playtex); *Delamere Company v. Taylor Bell Company,* 199 F.Supp. 55, 56 (S.D.N.Y. 1961) (Woolworth was a mere customer of Delamere's hair curlers); *Rhode Gear U.S. A. v. Frank's Spoke N Wheel, Inc.,* 225 U.S.P.Q. 1256 (D.C.Mass.1985) (bike store was mere customer of bike and gear manufacturer). Deference to the second filed suit is justified on the ground that the manufacturer's economic interests in successfully defending the suit are greater than are the customers. "[I]n reality, the manufacturer is the true defendant in the customer suit ... it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Codex, supra,* 553 F.2d at 737–38.

## B. *Application of the Test*

 GM argues that the suit before this Court constitutes a "customer action" which must be stayed pending the outcome of the Chicago suit involving the manufacturer of the accused devices. In brief, GM argues that Motorola is a manufacturer of the devices—the Motorola integrated circuit MC13020P—which are alleged to be infringing and that GM is merely a customer of Motorola. On the other hand, plaintiff argues that the "customer action" exception does not apply in this case because Kahn's patent claims are directed toward GM receivers, not toward the Motorola technology. Based upon the undisputed facts in this case, the Court concludes that the Motorola technology is indeed the focus of the underlying dispute and Motorola is the real party in interest.

The gravamen of Kahn's grievance is with the Motorola technology. Paragraph 10 of Kahn's amended complaint alleges Kahn's right to sue "with respect to radio receivers that incorporate Delco part number DM–235 or Motorola part number MC13020P integrated circuit." That the essence of Kahn's grievance focuses upon the Motorola technology is further supported by the following letters and statements, the validity of which have not been disputed. In a September, 1984 press announcement, Kahn stated:

> Hazeltine Research In. (HRI) has determined, as a result of analysis of the operation of the Motorola MC13020P integrated circuit, that AM stereo *receivers using this integrated circuit* infringe upon one or more claims of one of Kahn AM Stereo patents which is being licensed by HRI.

GM Reply Brief, Ex. C (emphasis added). Similarly, in November, 1986, Kahn wrote to Motorola:

> It is our position that *receivers using your Am stereo integrated circuits,* infringe one of my patents. We have informed all receiver manufacturers using your integrated circuits that they were infringing. We plan at some point, to initiate litigation which we believe will result in the payment of significant damages *by your customers,* probably in excess of the profits that Motorola can expect to generate, even if you are successful in the AM Stereo marketplace.

GM Reply Brief, Ex. B (emphasis added). Kahn repeated his focus upon Motorola technology at a National Association of Broadcasters Show, in April 1988, when he displayed a sign asserting:

> *LATE NEWS RE: AM STEREO* ON OR BEFORE MAY 31, 1988 A SUIT WILL BE FILED IN U.S. FEDERAL COURT REQUESTING A PERMANENT INJUNCTION HALTING THE SALE OF MOTOROLA TYPE AM STEREO RADIOS.

GM Reply Brief, Ex. D. Clearly then, from the beginning, the key concern of plaintiff is whether his patent is infringed by the Motorola technology.

HRI argues that even if GM technically is a customer, it is not a *mere* customer because "[i]t was well aware, having been put on notice by Kahn and HRI, that if it manufactured its Delco receivers using the

Motorola technology, those receivers would be considered infringements of the Kahn '994 patent. Nevertheless, GM proceeded to manufacture those receivers with knowledge of the consequences." HRI Amicus Mem. 6. In other words, GM is not a *mere* customer in HRI's opinion, it is a guilty customer. The case law, however, makes no such distinctions in applying the customer exception doctrine.[4]

HRI and Kahn also argue that GM is not a *mere* customer because it such a large customer. Kahn states:

> GM is the worlds largest *manufacturer* of automobiles and the largest U.S. manufacturer of car radios with huge research, development and patent departments. And it pleads it should be treated with the same cloak of innocence as Frank's bicycle shop [the customer described in *Rhode Gear U.S.A., supra*].

Kahn Sur-Reply Brief at 11. This argument also is invalid. The logic of the customer exception rule applies equally in this case as in the case of the small bicycle store owner. "The word 'mere' does not refer to the volume of purchases made by the customer; rather, it refers to the customer's status as a customer, rather than producer." *Medical Development Corp. v. American Hospital Supply Corp.*, 205 U.S.P.Q. 198, 200 (D.Utah C.Div.1979). GM is the customer of the Motorola technology which is the focus of the litigation, and Motorola is the real party in interest. Thus, the customer action exception applies.

Kahn's argument that the customer exception doctrine does not apply is based largely upon a narrow reading of *Ciba–Geigy Corp. v. Minnesota Mining & Mfg. Co.*, 439 F.Supp. 625 (D.R.I.1977). In that case, a chemical manufacturer, Ciba–Geigy, sold a chemical mixture to a second manufacturer, Ansul, that blended the mixture with other chemicals to create a fire-fighting foam. 3M Company brought a patent suit against Ansul. The court held that while Ciba–Geigy was a principal in the

dispute, and 3M's quarrel was at bottom with Ciba, the customer exception doctrine did not apply because Ciba was merely a manufacturer of a component of the patented combination, and not a manufacturer of the patented item itself. Kahn's reliance upon *Ciba–Geigy* is defective. Not only are the facts distinguishable, but also the Rhode Island district court in *Ciba–Geigy* did not consider the leading case in this Circuit—*Gluckin*, which gives district courts broad discretion to balance conveniences and to determine where the "whole of the war and all the parties to it" are located. *Gluckin, supra*, 407 F.2d at 180, *citing Kerotest, supra*, 342 U.S. at 183, 72 S.Ct. at 221.

The customer action exception takes on added vitality where, as here, the second action involves all of the issues and the real parties in interest. The Chicago action correctly identifies the two major players in this case—Motorola and HRI. Motorola has agreed to indemnify GM with respect to Kahn's claims. HRI and Kahn argue that this fact supports a decision not to stay the New York action since Motorola is in privity with GM and will be bound by the results of the New York case. This fact, however, actually cuts the other way. That Motorola is an indemnifier and that Motorola's counsel is actively conducting both the New York and Chicago actions demonstrates that Motorola has a greater interest in this suit than GM. *See Ciba–Geigy, supra*, 439 F.Supp. at 628 (Ciba was a principal in litigation when it was an indemnifier), *citing Joseph Bancroft and Sons v. Spunize Co. of America*, 268 F.2d 522, 523 (2d Cir.1959) (contract of indemnity for patent litigation with licensee creates controversy between manufacturer and patent-holder).

Along with Motorola, the Chicago action includes HRI—a major player on the other side. Despite HRI's assertion of no interest in this case, it has submitted as many papers in connection with this action, with permission of the Court, as has GM. In these papers, HRI explicitly states that if

---

4. Kahn suggests that "[p]ossibly the cases, instead of being referred to as 'customer suits,' might better be called 'innocent infringer suits.'" Kahn's Sur-Reply Brief at 10, n. *. However, Kahn offers no cases which have taken such an approach.

Motorola or any Motorola customer "attacks the validity of the Kahn '994 patent, HRI will seek to intervene to protect its rights under the '994 patent." HRI Amicus Mem. at 3.[5] Thus, HRI admits that it has an important interest in this dispute. Thus, because it includes HRI and Motorola as parties, the Chicago case provides a better forum for litigating the disputes between the real parties in interest.[6]

To the extent possible, related claims should be tried in one case before a single tribunal.

> There is a strong policy favoring the litigation of related claims before the same tribunal in order that: (1) pretrial discovery can be conducted more efficiently; (2) the witness can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the [same] time serving the public interest; (4) inconsistent results can be avoided.

*Schneider v. Sears,* 265 F.Supp. 257, 266–67 (S.D.N.Y.1967). All of these benefits can be obtained if this action is stayed. Costs to the parties will be reduced and promoted.

The Chicago case will determine whether HRI or Kahn—or anyone else for that matter—has any viable claim under patent '994 based on Motorola technology, whether used by GM, Motorola or any other Motorola customer. HRI does not dispute GM's statement that "[n]ot a single issue that can pass muster under Rule 12(B)(6) will remain to be resolved with GM should Motorola prevail ... in the Chicago action."[7] If the Chicago court finds that the '994 patent is invalid, Motorola's customers would be able to continue to buy and use Motorola's technology without fear of litigation based upon patent '994.

Kahn and HRI argue that if Motorola does not prevail, Kahn would still have to proceed against GM for equitable relief and damages. This is not necessarily the case. The court in the Chicago action could order Motorola to notify its customers that its circuit board violates patent '994. Also, if Motorola is liable, Motorola would no longer be permitted to make its circuit boards in violation of the patent and, thus, would be unable to pass the offending circuit boards on to its customers. Kahn alleges in his amended complaint that "Motorola Corporation [is] the main electronics subcontractor for General Motors, and indeed for the entire American car industry ..." Am. Complaint ¶ 44. By stopping Motorola, then, the reach of the Chicago suit would be broad indeed.

Even though the Chicago suit would involve the real parties in interest and decide the underlying patent dispute, this Court will not stay the New York action if to do so would unduly burden plaintiff. Among the factors to be considered when deciding whether the balance of conveniences weights in favor of the second action are:

> the convenience of the parties; the convenience of their witnesses; whether nonparty witnesses are subject to the subpoena power of the court insofar as their live testimony is more desirable than their deposition testimony; the availability of documentary evidence; and the relative burdens of expenses on the parties ...

*National Patent Development Corp. v. American Hospital Supply,* 616 F.Supp. 114, 119 (S.D.N.Y.1984) (Weinfeld, J.).

---

5. *See also* Letter to this Court from HRI, dated August 29, 1988 ("HRI ... has an interest in the issue of the validity of the patent.").

6. The Court recognizes that pursuant to Rule 19(b) Fed.R.Civ.P., the Court may proceed with an action against one party who has created a controversy, by charging another with infringement, in the absence of an interested party who has knowledge of the action. *Micro Acoustics Corp. v. Bose Corp.,* 493 F.Supp. 356, 358 (S.D.N.Y.1980). However, in this case the customer exception applies and the interests of the parties, as well as interests of judicial efficiency compels the Court to stay this action.

7. HRI does not dispute this statement in its August 29, 1988 letter to this Court. However, HRI emphasizes that this statement does not consider what would happen if Motorola does *not* prevail. The Court addresses this concern *infra.*

Applying these factors to the present case, the Court finds that the convenience of the parties weighs in favor of a stay. Both HRI and Motorola are headquartered in the Northern District of Illinois. HRI tested the '994 patent in Illinois. While Kahn's employees are located in New York, relevant documents and potential witnesses pertaining to the Motorola technology and HRI's testing activity are located in Chicago. Moreover, Kahn has significant contacts with the Illinois forum and would not be unduly burdened by a suit in the Northern District of Illinois. Kahn does not dispute that he has long attempted to do business in Illinois.[8] While Kahn resides and has his place of business in New York, it is undisputed that Kahn had numerous contacts with HRI in Illinois regarding the testing of Motorola technology, and, more generally, the licensing and promotion of patent '994. Kahn also does not dispute that while Kahn Communications is small compared to GM, it has considerable resources of its own. Thus, the Court finds that the customer exception doctrine, consideration of judicial economy, and a balancing of conveniences mandate that this case should be stayed.

### III. *Conclusion*

Accordingly, it is hereby ordered that all proceedings in this action are stayed pending the conclusion of *Motorola Inc. v. Hazeltine Research, Inc.*, 88 Civ. 4663, filed May 27, 1988, in the United States District Court for the Northern District of Illinois.

SO ORDERED.

---

**8.** The Court notes that where a party's contact with the forum state resulted from its own efforts to circulate goods within the state, the state's exercise of jurisdiction over the party is proper. *Ultracashmere House v. Madison's of Columbus,* 534 F.Supp. 542 (S.D.N.Y.1982).