**NATIONAL HOCKEY LEAGUE, et al.**

v.

**NATIONAL HOCKEY LEAGUE
PLAYERS ASSOCIATION,
et al.**

Civ. No. 4–91–636.

United States District Court,
D. Minnesota,
Fourth Division.

April 7, 1992.

Gary J. Haugen, Maslon, Edelman, Borman & Brand, Minneapolis, Minn., and Herbert Dym, Covington & Burling, Washington, D.C., for plaintiffs.

Luke H. Terhaar, Lindquist & Vennum, Minneapolis, Minn., and James W. Quinn, Weil, Gotshal & Manges, New York City, for defendants.

## ORDER

ROSENBAUM, District Judge.

### The Anthems

The National Hockey League (NHL) seeks a declaratory judgment against the National Hockey League Players Association (NHLPA) and a putative defendant class of hockey players. The NHL and its twenty-two Member Clubs (the clubs) seek a declaration that their continued adherence to particular contract terms of the parties' 1988 Collective Bargaining Agreement[1] (the 1988 Agreement) is protected from antitrust challenge under the nonstatutory labor exemption, as defined by the Eighth Circuit in *Powell v. National Football League*, 930 F.2d 1293 (8th Cir. 1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 711, 112 L.Ed.2d 700 (1991). Prominent among plaintiffs' goals is the preservation of the NHL "equalization rules"—the "reserve clause" of professional hockey.

Plaintiffs assert that the proper defendants are arrayed before the Court, and move to certify a mandatory defendant class of both present and future players. Plaintiffs then seek summary judgment. Defendants, in reply, move to dismiss the action for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.). Defendants seek dismissal, claiming the NHLPA is not a proper party to this declaratory judgment action and, further, that no "actual controversy" exists between the NHL and the putative defendant class. Matters outside the pleadings have been presented to, and considered by, the Court. Therefore, the defendants' motion shall be treated as one for summary judgment. *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992); Fed.R.Civ.P. 12(b).

For the reasons set forth below, the Court finds that plaintiffs' suit against the NHLPA lacks an independent basis for subject matter jurisdiction. Further, the Court finds that no justiciable controversy exists to provide jurisdiction for plaintiffs' action against the named defendant players or the putative defendant class. Accordingly, the matter is dismissed for lack of subject matter jurisdiction.

### The Players

The NHL is an unincorporated, not-for-profit association dedicated to the perpetuation of hockey as one of the national

---

1. This contract, with a nominal three year duration, was executed June 1, 1988. It covers the terms and conditions of employment for all NHL hockey players and the assignment of negotiating rights of drafted amateur hockey players. Complaint ¶ 36; Declaration of John A. Ziegler, Jr., at ¶ 2.

games of the United States and Canada. Compl. ¶ 5; 1988 Agreement at 1. There are currently twenty-two employer member clubs in the NHL which constitute the NHL teams presently in operation. Compl. ¶ 5.

The NHL and the clubs (the plaintiffs), bring this declaratory judgment action against the NHLPA and a putative defendant class of hockey players (the defendants). The NHLPA is a labor organization as defined by § 2(5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 152(5). The NHLPA is recognized as the exclusive bargaining representative for all present and future hockey players employed by the clubs. 1988 Agreement at 1.

The putative class representatives, the named defendant players, include Robert S. Gavin, a professional hockey player, employed during the 1991–92 season by the Minnesota North Stars; David Maley, a professional hockey player, employed during the 1991–92 season by the New Jersey Devils; Shawn Chambers, a professional hockey player, employed during the 1991–92 season by the Washington Capitals; Tom Kurvers, a professional hockey player, employed during the 1991–92 season by the Vancouver Canucks; Don Beaupre, a professional hockey player, employed during the 1991–92 season by the Washington Capitals; Brad Willner, an amateur hockey player, drafted by the New Jersey Devils in June, 1991; and Steve Magnusson, an amateur hockey player, drafted by the Calgary Flames in June, 1991.[2]

In a dazzling cross-ice pass, plaintiffs seek certification of a mandatory, non-opt-out defendant class comprised of:

All hockey players who are presently on a Reserve, Inactive, or Free Agent List of an NHL club pursuant to NHL By-Laws, and all hockey players who are on a Reserve, Inactive, or Free Agent List or any NHL club pursuant to NHL By-

Laws at any time prior to the date of final judgment in this action.

Compl. ¶ 50.

But is there a whistle?

*The Rules*

The contract provisions which lie near the core of this declaratory judgment action are the NHL "equalization rules."[3] Generally stated, these rules require that any NHL club contracting to acquire a free agent player provide an "equalization payment" to the free agent's former club. This equalization payment may be in the form of player contract assignments, draft pick assignments, or a cash payment. Notably, the equalization payment must be mutually agreed between the member clubs involved. The player is merely the triggering mechanism. If the clubs do not agree to the equalization terms within three days of the free agent's acquisition, the matter must be submitted to binding arbitration. 1988 Agreement, Ex. 15 at § 9A.8(b).

There is no serious question that these rules restrict the free agent's movement within the league and encumber the free agent's salary negotiations with a potential acquiring club. These effects may possibly implicate federal antitrust law. Plaintiffs contend that these rules, which they fervently wish to maintain, pose a risk of antitrust litigation. This risk, they assert, gives this Court jurisdiction to issue declaratory relief.

*The Face Off*

A procedural history of the parties' collective bargaining negotiations is necessary to an understanding of plaintiffs' self-described "consternation" at the prospect of antitrust litigation and their consequent filing of this action.

On May 14, 1991, the NHLPA sent the NHL a "Notice of Termination and Proposed Revision of Agreement." According to the NHLPA, this notice was designed to trigger the termination of the 1988 Agreement on September 15, 1991. Having sent

---

**2.** Official NHL Registry listed by Sporting News, 1992.

**3.** These rules are found at sections 9A, 9B, and 16 of the NHL By-Laws, which are incorporated as a part of the 1988 Agreement. *See* 1988 Agreement, Exs. 15, 16, and 17.

this notice, the NHLPA contends that the 1988 Agreement has expired and that the players are currently without a contract. The contract, however, requires that a party seeking termination "shall furnish the other a written notice of termination and proposed revision of this agreement not less than 120 days prior to the 15th day of September, 1991...." 1988 Agreement at Art. II § 2.01.[4] Consequently, the NHL contends that a full-text "proposed revision" should have accompanied the notice. Because the NHLPA's notice was unaccompanied by such revision, plaintiffs do not consider this notice to be an effective termination of the contract.[5]

In support of the NHL's view, the clubs delivered a memorandum to the NHLPA on June 13, 1991, along with management's contract proposals. This memorandum further set forth the club's position that the NHLPA's notice of termination was ineffective and failed to terminate the contract on September 15, 1991.

In response, the NHLPA distributed to the Clubs a memorandum entitled "Players' Position on Free Agency Issues." This memorandum, dated June 14, 1991, asserted that if the terms of the 1988 Agreement "are imposed without the players' approval after September 15, when the existing collective bargaining agreement terminates they, in our view, plainly would violate the antitrust laws and would subject the league and its tems [sic] to treble damages." Ziegler Decl. at ¶ 8.[6]

On July 5, 1991, in an apparent effort to resolve the standoff over termination of the agreement, the Clubs submitted the question of whether the NHLPA's failure to include a proposed contract revision rendered the termination ineffective to binding arbitration. The Clubs withdrew this arbitration submission on August 20, 1991, at the time of filing the complaint. Compl. ¶ 45. At the time of oral argument, and indeed to this date, the parties have continued to meet, and to bargain, with the intent of achieving a new collective bargaining agreement. Ziegler Decl. ¶ 6. No new contract has, thus far, been achieved, and on April 1, 1992, the NHL players went on strike. According to recent communications between counsel and this Court, however, the negotiating ice may yet melt.

*The Power Play*

■ Plaintiffs claim they have been checked into the boards between the defendants, the Sherman Antitrust Act, and the NLRA. Plaintiffs fear that their continued adherence to the equalization rules, which they argue is compelled by the NLRA, *see Litton Financial Printing v. N.L.R.B.,* — U.S. ——, 111 S.Ct. 2215, 2217, 115 L.Ed.2d 177 (1991); *N.L.R.B. v. Katz,* 369 U.S. 736, 747, 82 S.Ct. 1107, 1113, 8 L.Ed.2d 230 (1962),[7] may simultaneously subject them to treble damages under federal antitrust law. Plaintiffs, therefore, ask this Court to declare that their compliance with the equalization rules, or terms substantially similar thereto, is protected from anti-

---

**4.** Failure to deliver this written notice of termination and a proposed revision results in an automatic year-to-year extension of the contract. 1988 Agreement at Art. II § 2.01.

**5.** In their memo in opposition to defendants' motion to dismiss, plaintiffs contend that defendants' failure in this regard was one of several measures used to insure that a new collective bargaining agreement would not be achieved by the September 15, 1991, deadline, thereby exposing the Clubs to potential antitrust liability.

**6.** In its briefs, and at oral argument, the NHL made clear that James W. Quinn, an antitrust lawyer, was present on June 14, 1991, at the time this memorandum was distributed. Plaintiffs offer Quinn's presence as further evidence of defendants' intent to pursue antitrust litigation.

Plaintiffs also contend that in August, 1990, the incoming Deputy Director of the NHLPA stated that "litigation and antitrust certainly is an area that the NHLPA will explore in the 1991 negotiations 'to generate pressure on the owners.'" Compl. ¶ 47.

**7.** Under the unilateral change doctrine, if an existing collective bargaining agreement has expired, and negotiations of a new contract have yet to be completed, an employer must bargain to impasse before it may unilaterally change an existing term or condition of employment. An employer's unilateral change, prior to bargaining impasse, results in a violation of the NLRA. *See Litton,* 111 S.Ct. at 2217; *Katz,* 369 U.S. at 747, 82 S.Ct. at 1113.

trust challenge under the non-statutory labor exemption as defined by *Powell v. National Football League*, 930 F.2d 1293 (8th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 711, 112 L.Ed.2d 700 (1991).

Plaintiffs seek to take advantage of *Powell* and remove, at least for the present, the threat of an antitrust action from the NHLPA's collective bargaining arsenal. Plaintiffs seek a definitive declaration of the instant at which they would face a ripened antitrust challenge or—at a minimum—a declaration that they have not yet passed into any danger zone which still exists after *Powell.*

*Off Sides*

■ Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201. The relevant provision of the Declaratory Judgment Act (the Act) states:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201 (1991). Adjudication under the Act is not compulsory. *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942).

■ The decision as to whether a declaratory judgment should issue lies within the sound discretion of the Court. *Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581, 7 L.Ed.2d 604 (1962). Furthermore, before a court may even consider the issuance of a declaratory judgment, plaintiffs must satisfy the statute's two jurisdictional requirements. First, plaintiffs must demonstrate the Court's independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950); *Collin County, Texas v. Homeowners Ass'n for Values Essential to Neighborhoods (HA-VEN),* 915 F.2d 167, 170 (5th Cir.1990); Wright, Miller & Kane, *Federal Practice & Procedure* § 2766 (1983 & Supp.1991). Second, plaintiffs must show there is an actual controversy between the parties. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937).

Defendants assert that the complaint is deficient in both regards. They seek dismissal, first, because the Court lacks independent subject matter jurisdiction to support an action against the NHLPA and, second, because there is no actual controversy between the plaintiffs and either the named defendants or the putative defendant class.

■ The Court first considers whether there is subject matter jurisdiction to support a declaratory judgment action against the NHLPA. Plaintiffs allege that this Court has subject matter jurisdiction under the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.,* and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* Compl. ¶ 2. In particular, plaintiffs assert that the NHLPA's ability to bring a coercive antitrust suit provides federal question jurisdiction for this action. In support of this contention, plaintiffs rely on *United Food & Com. Workers v. Food Employers Council,* 827 F.2d 519 (9th Cir.1987).

In determining whether federal question jurisdiction exists, the Court is mindful that "in many actions for declaratory judgment, the realistic position of the parties is reversed." *Public Service Comm'n of Utah v. Wycoff,* 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952). "If ... the *declaratory judgment defendant* could have brought a coercive action in federal court to enforce its rights, jurisdiction exists for declaratory relief." *Levin Metals Corp. v. Parr–Richmond Terminal Co.,* 799 F.2d 1312, 1315 (9th Cir.1986) (citations omitted) (emphasis in original). Accordingly, the Court must determine whether the NHLPA, as a party, would have standing to bring a coercive antitrust action against

the plaintiffs.[8]

In *Associated General Contractors v. Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the Court held that a union lacked standing to bring an antitrust action. The Supreme Court established a five-part inquiry to determine whether a private party has standing to bring a coercive action under the antitrust laws.[9] The Court must consider: 1) whether a causal connection exists between the antitrust violation and the alleged injury; 2) the nature of the alleged injury; 3) whether the asserted injury is direct, or indirect and, therefore, too speculative; 4) the potential for duplicative recovery or a complex apportionment of damages; and 5) the existence of an identifiable class of persons better suited to vindicate the public interest in antitrust enforcement. *See id.* at 537–544, 103 S.Ct. at 908–912; *Austin v. Blue Cross and Blue Shield of Alabama*, 903 F.2d 1385, 1388 (11th Cir.1990); *Fischer v. NWA, Inc.*, 883 F.2d 594, 599 n. 7 (8th Cir.1989).

In applying these factors, the *Associated General Contractors* court found that the plaintiff union would not necessarily be served by enhanced competition because the union was neither a competitor nor a consumer in the allegedly restrained market. 459 U.S. at 539, 103 S.Ct. at 909. Further, the court found that the causal connection between the alleged coercion and the union's injury was too attenuated. The court held that any injury suffered by the union was an indirect result of actual harm to certain construction contractors

and subcontractors. *Id.* at 541, 103 S.Ct. at 910. The court reasoned that individual subcontracting firms, or the immediate victims of the alleged coercion by defendants, would make more appropriate plaintiffs than the union. *Id.* The court also found that the union's damages claims would be highly speculative,[10] *id.* at 542, 103 S.Ct. at 911, and therefore would result in duplicative recoveries or a complex, judicially unmanageable apportionment of damages. *Id.* at 545, 103 S.Ct. at 912. Accordingly, the court refused to afford antitrust standing to the union under the Sherman Act.

This Court finds, for precisely the reasons enunciated in *Associated General Contractors*, that the NHLPA would lack standing to bring an antitrust action to challenge the NHL's equalization rules. If antitrust injury exists as a result of the equalization rules, it is the players, not their collective bargaining representative, who would suffer the economic effects. As a result, the Court finds that a player-plaintiff would be better suited to vindicate the antitrust laws. Any damage to the NHLPA must be considered speculative, and would likely be duplicative of any recovery by individual players. The Court finds that the NHLPA lacks standing to bring a coercive antitrust action and, therefore, this Court lacks subject matter jurisdiction to entertain a declaratory judgment action against the NHLPA.

Plaintiffs' reliance upon *United Food & Comm. Workers v. Food Employer's Council, Inc.*, 827 F.2d 519 (9th Cir.1987), is misplaced.[11] In that procedurally un-

---

8. The issue of standing to sue under the Sherman Act is a question of law and is appropriate for summary resolution. *Midwest Communications v. Minnesota Twins*, 779 F.2d 444, 449 (8th Cir.1985), *cert. denied*, 476 U.S. 1163, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986).

9. "[T]he focus of the doctrine of 'antitrust standing' is somewhat different from that of standing as a constitutional doctrine. Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Associated General Contractors*, 459 U.S. at 535 n. 31, 103 S.Ct. at 907 n. 31; *Bell v. Dow Chemical Co.*, 847 F.2d 1179, 1183 (5th Cir.1988).

10. "There is ... no allegation that any collective-bargaining agreement was terminated as a result of the coercion, no allegation that the aggregate share of the contracting market controlled by union firms has diminished, no allegation that the number of employed union members has declined, and no allegation that the Union's revenue in the form of dues or initiation fees have decreased." *Associated General Contractors*, 459 U.S. at 542, 103 S.Ct. at 911.

11. Plaintiffs also seem to claim that this Court may proceed to issue declaratory relief "whether or not further relief ... could be sought," quoting the *United Food* court at p. 523. This Court rejects this position, and has the temerity

usual case, the unions were forced by a trade association of supermarket chains (the Council) into placing a "most-favored nations" clause in their collective bargaining agreement. Therefore, the unions perceived that they, themselves, might be subject to suit by competitor supermarkets. The unions sued to rescind this clause by bringing a declaratory judgment action. The Ninth Circuit found federal question jurisdiction to support the union's declaratory judgment action because the Council had the ability to bring a coercive action against the unions under § 301 of the Labor Management Relations Act. On this set of facts, the Ninth Circuit was able to find federal question jurisdiction to allow the district court to hear the unions' declaratory judgment action.

In sum, *United Food* stands for the proposition that a union may proceed in a declaratory judgment action which includes relief touching upon antitrust issues; it does not hold, as plaintiffs contend, that a union may bring a freestanding coercive lawsuit arising under the Sherman Act. Accordingly, plaintiffs' action against defendant NHLPA is dismissed for lack of subject matter jurisdiction.

■ Defendants concede that under the *Associated General Contractors* test indi-

vidual players, as opposed to the NHLPA, would have standing to bring a coercive antitrust action against plaintiffs. However, defendants contend that no actual, substantial controversy exists between the plaintiffs and the named defendant players and the putative class members.

■ The "actual controversy" requirement of § 2201 of the Act is synonymous with the "case or controversy" requirement of Article III, section 2, of the United States Constitution. *Steffel v. Thompson*, 415 U.S. 452, 458, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974). "[T]he question in each case is whether the facts alleged ... show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).[12] The dispute must be "definite and concrete, not hypothetical or abstract." *Babitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (*quoting Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945)). "The difference between an abstract question and a 'controversy' ... is necessarily one of de-

to suggest that *United Food*'s authors may have misconstrued the words of 26 U.S.C. § 2201, which clearly relate to the timing of the action. This statutory term allows a declaratory judgment plaintiff to proceed prior to exhaustion of other legal remedies, and without pleading an inadequate remedy at law. *See* Wright, Miller & Kane, *Federal Practice & Procedure* § 2758 (1983); Fed.R.Civ.P. 57, Notes of Advisory Committee at time of Rule's adoption in 1937 ("The fact that a declaratory judgment may be granted 'whether or not further relief is or could be prayed' indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary.").

**12.** Plaintiffs urge the Court to apply a less rigorous standard, based upon their "reasonable apprehension" of litigation by the players. For this proposition, plaintiffs cite a line of cases from this circuit and district, all of which involve declaratory judgment actions in potential patent infringement litigation. *See Sherwood Medical Indus., Inc. v. Deknatel, Inc.*, 512 F.2d 724, 728 (8th Cir.1975); *Medtronic, Inc. v. Mine Safety Appliances Co.*, 468 F.Supp. 1132, 1135 (D.Minn.1979); *Medtronic, Inc. v. American Op-*

*tical Corp.*, 327 F.Supp. 1327, 133 (D.Minn. 1971); *Owatonna Mfg. Co. v. Melroe Co.*, 301 F.Supp. 1296, 1299 (D.Minn.1969).

The Court rejects this suggestion. This less rigorous standard is applied in patent cases to avoid a multiplicity of actions and the uncertainty and delay which broad patent litigation would entail. Wright, Miller & Kane, *Federal Practice & Procedure* § 2761 (1983). Plaintiffs contend that this standard applies to all commercial disputes, but cite no authority in support of their contention. Declaratory judgment litigation has developed distinct personalities depending upon the substantive law at issue. For example, in insurance litigation, declaratory judgments are frequently issued in regard to coverage issues, but are frequently and appropriately denied when the issue is liability. *See* Wright, Miller & Kane, *Federal Practice & Procedure* § 2760 (1983).

Accordingly, the Court finds it inappropriate to bootstrap the "reasonable apprehension" standard, as applied in patent cases, to this antitrust case.

gree...." *Maryland Casualty*, 312 U.S. at 273, 61 S.Ct. at 512. The existence of an actual controversy is determined at the time the court acts. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); Wright, Miller & Kane, *Federal Practice & Procedure* § 2757 (1983).

Plaintiffs raise several factual contentions in support of their claim that antitrust litigation by the players is a substantial and immediate threat. Plaintiffs cite the NHLPA's June 14, 1991, memorandum to the clubs. This is the document which suggests that if the terms of the 1988 Agreement "are imposed without the players' approval" antitrust laws may be implicated. Ziegler Decl. at ¶ 8. Plaintiffs also cite Quinn's presence as a clear and present antitrust danger. Finally, plaintiffs contend that the NHLPA, by its failure to include a proposed revision with the contract termination notice, attempted to create an opportunity for the NHLPA and players to pursue antitrust litigation.

The Court finds that this is not "the type of Damoclean threat that the Declaratory Judgment Act ... [was] designed to avoid." *National Basketball Ass'n v. SDC Basketball Club*, 815 F.2d 562, 566 (9th Cir.1987), *cert. dismissed*, 484 U.S. 960, 108 S.Ct. 362, 98 L.Ed.2d 386 (1987). The facts asserted by plaintiffs as a predicate for this action are nothing more than typical collective bargaining posturing. It is certainly no secret to these parties, to this Court, or to the average eight-year-old sports fan that antitrust issues exist in professional sports.[13]

The putative, individual defendants, who did not volunteer for this role, have presented affidavits. Each defendant avers that he has no intent to bring an antitrust action, has not orally expressed such an intent, and has not authorized another to express this on his behalf. Finally, each declares that he has no interest in becoming a class representative. Goodenow Aff., Exs. A1–A7. Other players, from 21 of the 22 member clubs, similarly deny any intention of suing the plaintiffs, and further object to being named as putative members of a defendant class. Goodenow Aff., Exs. B1–B21. In light of these uncontroverted affidavits, this Court cannot find that plaintiffs have demonstrated a concrete dispute of sufficient immediacy to provide subject matter jurisdiction over this declaratory judgment action. Accordingly, plaintiffs' action against the seven named defendants and the putative class of defendant players must be dismissed.

*The Zamboni*

Based upon the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

This matter is dismissed for lack of subject matter jurisdiction.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**13.** This has been the case historically, *see, e.g., Flood v. Kuhn*, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972) (baseball); *Radovich v. National Football League*, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957) (football); *United States v. International Boxing Club of N.Y.*, 348 U.S. 236, 75 S.Ct. 259, 99 L.Ed. 290 (1955) (boxing).

It is even more prevalent today as the leagues and players have consented to more restrictive contract provisions. *See, e.g., Powell v. National Football League*, 930 F.2d 1293 (8th Cir.1989), *cert. denied*, — U.S. ——, 111 S.Ct. 711, 112 L.Ed.2d 700 (1991); *United States Football League v. National Football League*, 842 F.2d 1335 (2nd Cir.1988); *Wood v. National Basketball Ass'n*, 809 F.2d 954 (2nd Cir.1987); *Seattle Totems, Etc. v. National Hockey League*, 652 F.2d 852 (9th Cir.1981), *cert. denied, Northwest Sports Enterprises, Ltd. v. Seattle Totems Hockey Club*, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1313 (1982); *Mackey v. National Football League*, 543 F.2d 606 (8th Cir.1976), *cert. dismissed*, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977); *Brown v. Pro Football, Inc.*, 782 F.Supp. 125 [1991–1 Trade Cases] CCH ¶ 69,454 (D.D.C. 1991).